| | |
|---|---|
| MALCOLM BETHEA, JOSEPH VAZQUEZ, and MARIAHLEE SPAHN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>SAZERAC COMPANY INC.,<br>Defendant. | 1:24-cv-03747<br><br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Malcolm Bethea ("Plaintiff Bethea"), Joseph Vazquez ("Plaintiff Vazquez"), and Mariahlee Spahn ("Plaintiff Spahn") ("Plaintiffs"), through Counsel, allege upon information and belief, except for allegations about Plaintiffs, which are based on personal knowledge:

1.      The International Bartenders Association ("IBA"), Merriam-Webster's Diction, and Wikipedia, among other sources, define a margarita as "a cocktail consisting of tequila, orange liqueur, and lime juice[]."



2.     A margarita can be enjoyed in a glass, or frozen, blended with ice.

 

3.     According to a study in connection with World Cocktail Day, the margarita is "the most popular cocktail in the world."[1]

4.     This popularity owes to numerous reasons.

5.     First, the margarita's "refreshing taste" "offer[s] the perfect balance of sweet, sour, and salty flavours."[2]

6.     This is due to the customary margarita ingredients, starting with tequila, "the base spirit and star of th[is] cocktail."

[1] Julie Sheppard, World Cocktail Day: Margarita Tops List of the World's Favourite Cocktails, Decanter, May 13, 2021.
[2] 5 Reasons Why We LOVE A Margarita Cocktail!
by Hannah Craggs | Feb 14, 2023

7.    The source of tequila is the blue agave plant, a succulent with large leaves and pointy tips, native to regions of the Americas.[3]

 

8.    Standards for tequila production were established by the Norma Oficial Mexicana ("NOM"), and adopted by the United States, requiring that it contain not less than 51% blue agave sugars, prior to fermentation.[4]

9.    These "specification[s] ensure[] a consistent flavor profile…[because] [t]he sugars extracted from the heart (piña) of the blue agave," along with "the aging process," "gives tequila its distinct taste and characteristics."[5]

10.    According to flavor scientists, "Tequila has the most diverse flavor

---

[3] A succulent plant is one that retains water in its leaves in dry climates.

[4] NOM-006-SCFI-2005, Alcoholic Beverages – Tequila – Specifications; 27 C.F.R. § 5.148(b)(1).

[5] Suavecito Tequila, Authentic Mexican Tequila: Discovering the Differences That Matter, Sept. 7, 2023; Olmeca Altos, Aging Tequila; Cupcakes and Cutlery, Best Tequila for Margaritas.

profile of compound classes, but contributes to the [margarita] flavor mostly with esters and alcohols."

11. The "tequila brings a unique warmth and distinctive agave flavor" to a margarita.

12. Beyond the tequila, the "Lime juice and orange peel oil (which is part of the orange liqueur) contribute mostly with terpenes," providing its "tangy citrus flavor."

13. A margarita aficionado asked rhetorically, "Who can deny the bright, tenacious flavor of tequila with freshly squeezed lime juice, a hit of orange liqueur for sweetness, and a salt rim to balance the flavors?"[6]

14. Though "A margarita bears a resemblance to a daiquiri in its balance of sweet and sour, [] it's the unique tequila flavor," described as "earthy-yet-sweet," "that distinguishes it."[7]

15. Second, the increased popularity of margaritas is a result of the significant increase in consumer demand for spirits based on agave, such as tequila and mezcal, which have surpassed whiskey and vodka.[8]

---

[6] https://savoringtoday.com/classic-margarita/
[7] Jordan Schulkin and Pat Phair, Differences Between Tequila Types, , Ohio Liquor ("OHLQ"), May 3, 2024.
[8] Jessica Mason, US Consumers to Spend More on Mezcal and Tequila than Whiskey, The Drinks Business, June 20, 2022.

16.　Reasons include (1) their heritage as some of the oldest distilled spirits, (2) mixability and ease of use in cocktails, (3) agave's reputation as a crop untouched by modern agriculture, as opposed to traditional grains, and (4) numerous celebrity-owned premium tequila brands, providing additional exposure to the public.

17.　Third, many have touted the margarita's "healthy" qualities, compared to other alcoholic drinks.[9]

18.　New York's own Verde Kitchen points out that "Margaritas are fairly low in sugar contrasted with other cocktails [which] means you can enjoy them without suffering through a ton of empty calories."

19.　It also observed that "The agavins in tequila, the main liquor in margaritas, have been shown to reduce bad cholesterol (low-density lipoproteins or LDLs) [such that] moderate tequila consumption can help reduce the risk of heart disease and stroke."

20.　Finally, "Unlike other alcoholic beverages, like beer, which include heavy amounts of gluten, margaritas are a gluten-free drink."

21.　No institution was more associated with margaritas than Chi-Chi's, which once had over two hundred locations across the country.

---

[9] Margaritas are Healthy, Verde Kitchen.




22.   Owing to its true Mexican roots, Chi-Chi's is believed to be responsible for popularizing "Mexico's favorite drink" across the United States, introducing generations of Americans to the irresistible mix of tequila, triple sec, and lime juice.




23.   Though Chi-Chi's is no longer around, its legacy continues through its margaritas sold to consumers under its eponymous brand.

24.   For those seeking to recapture the Chi-Chi's excitement, Sazerac Company Inc. ("Defendant") introduced large bottles of Chi-Chi's "Original Margarita," in gold and green labeling, corresponding to the key margarita

ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime, described as "Made With Tequila & Triple Sec."

 

25.   In response to consumer demand for all-things-margarita and the value of the Chi-Chi's brand, this was followed by the introduction of miniature versions of the Original Margarita, for those seeking a margarita "on the go."

 

26.   However, miniature bottles of Chi-Chi's Original Margarita were only one among many consumer choices, making it difficult to stand out for impulse buyers.



27.   To boost sales, Defendant decided to not just compete against other mini bottles of mixed drinks based on distilled spirits, by developing and marketing a "pseudo cocktail" version of Chi-Chi's Original Margarita.

28.   This version was manufactured and designed to look and taste like its higher valued counterpart, but based not on distilled spirits, but a malt alcohol base, so it could be sold in more locations.

29.   Only the most eagle-eyed observers noticed what some have described as this "awful trick," noting what appears to be intentional similarities between the tequila-based margarita (left) and the "malt version" without tequila (right).



30. To protect consumers from having to "fly-speck" the alcoholic beverages they buy, the Federal Alcohol Administration Act ("FAAA") prohibits sellers from passing off lower quality malt beverages as distilled spirits, "irrespective of falsity," with respect to, *inter alia*, "the[ir] identity and quality." 27 U.S.C. § 201 *et seq*., e.g., 27 U.S.C. § 205(e) ("Labeling"); Title 27, Code of Federal Regulations ("C.F.R."), Parts 1 to 39, Tax and Trade Bureau ("TTB").

31. New York adopted these laws through its Alcoholic Beverage Control ("ABC") Law, because "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging," and their mental impressions related to other

labeling and packaging they have encountered, to make quick decisions about whether what they are buying contains distilled spirits.[10] *See*, i.e., ABC § 107-a(b)-(c); 9 NYCRR § 25.1 *et seq*; 27 C.F.R. § 7.122(a); 9 NYCRR § 84.1(a) (adopting TTB labeling regulations).[11]

32.    The labelling of the Chi-Chi's Original Margarita Malt is misleading for multiple reasons.

33.    First, while the malt version is required to have a "brand name," "Chi-Chi's Original Margarita" "is misleading [because] it creates [] by itself…[] erroneous impression[s] or inference as to [its] [] identity, or other characteristics." 27 C.F.R. § 7.63(a)(1); 27 C.F.R. § 7.64(b).

34.    This is because Chi-Chi's Original Margarita is associated with, and understood by consumers, as referring to the tequila and triple sec-based version.

35.    Second, the "Chi-Chi's Original Margarita" brand name "is misleading [because] it creates…an[] erroneous impression[] or inference as to [its] [] identity,

---

[10] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

[11] New York Codes, Rules and Regulations ("NYCRR"), Title 9, Executive Department, Subtitle B, Division of Alcoholic Beverage Control, Chapter I - Rules of The State Liquor Authority, Parts 25 to 106.

or other characteristics," *viz.*, that it contains the distilled spirt of tequila and orange liqueur, like its counterpart. 27 C.F.R. § 7.63(a)(1); 27 C.F.R. § 7.64(b).

36. The packaging and labeling of the Margarita Malt (right) features identical colors, theme, fonts, graphics, and other matter, such as the Chi-Chi's logo, cap in identical color, with identical grooves, and name of "Original Margarita," as the distilled spirit version (left).

 

37. Third, "Chi-Chi's Original Margarita" is not "qualified with the word 'brand' or with some other qualification [which could] dispel[] any misleading impression that might otherwise [be] created," that it contains tequila and triple sec, like its counterpart, when it does not. 27 C.F.R. § 7.63(a)(1); 27 C.F.R. § 7.64(b).

38. Fourth, though the Product's "statement of composition," "Malt Beverage With Natural Flavors and FD&C Yellow 5," "[only] meet[s] the…Minimum type size," it is not "readily legible to potential consumers under ordinary conditions." 27 C.F.R. § 7.52(a); 27 C.F.R. § 7.53(a)(2); 27 C.F.R. § 7.63(a)(2); 27 C.F.R. § 7.141(b)(2).




39. This information, in the smallest allowed size, is at the bottom of the bottle, unlikely to be seen by purchasers who have had their attention captured by Chi-Chi's "Original Margarita," in gold and green labeling, corresponding to the key margarita ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime.

40. Moreover, those who have bought the tequila version or are aware of it, or know anything of Chi-Chi's, will not know to glance downwards and strain their eyes, because they have no reason to expect what they are buying is anything other than Chi-Chi's "Original Margarita," containing tequila and triple sec.

41. Only if a purchaser has the Chi-Chi's Margarita Tequila version next to the Chi-Chi's Margarita Malt version could they notice that the former is based on distilled spirits while the latter is based on malt alcohol.

42. As the two are intentionally sold from different locations, such a comparison would be impossible at the point-of-sale.

43. Fifth, retailers selling the Chi-Chi's Margarita Malt display it next to other "pseudo-spirits," like Fireball and Southern Comfort, all in miniature bottles.

44. As these pseudo-spirits are often promoted as "shots," their promotion next to the Margarita Malt furthers the misleading impression the Chi-Chi's Margarita Malt contains tequila and triple sec, even though it is a malt beverage.

45. As a result of the false and misleading representations, comparisons, and omissions identified here, the Product is sold at a premium price, at or around $2.69 for 6.3 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and/or higher than it would be sold for absent the misleading representations, comparisons, and/or omissions.

## JURISDICTION

46. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

47. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

48. Plaintiff Bethea is a citizen of New York.

49. Defendant is a citizen of New Orleans and Kentucky.

50. The class of persons Plaintiff Bethea seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

51. The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from grocery stores, big box stores, drug stores, warehouse club stores, independent retail stores, beverage stores, gas stations, gas station convenience stores, convenience stores, bodegas, and/or other similar locations, in this State and/or online, to citizens of this State.

52.   Defendant transacts business in New York, through the sale of the Product to citizens of New York, from grocery stores, big box stores, drug stores, warehouse club stores, independent retail stores, beverage stores, gas stations, gas station convenience stores, convenience stores, bodegas, and/or other similar locations, in this State and/or online, to citizens of this State.

53.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

54.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, likeness, quantity, attributes, type, origins, amount, other versions, and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

55.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, likeness, features, quantity, attributes, type, origins, amount, and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State, and derives substantial revenue from interstate or

international commerce.

## VENUE

56.     Plaintiff Bethea resides in Queens County.

57.      Venue is in this Court because a substantial or entire part of the events or omissions giving rise to Plaintiff Bethea's claims occurred in Queens County.

58.     Venue is in this Court because Plaintiff Bethea's residence is in Queens County.

59.     Plaintiff Bethea purchased, used, consumed, and/or applied the Product in reliance on the packaging, labeling, representations, comparisons, and omissions, identified here, in Queens County, and/or other areas.

60.     Plaintiff Bethea first became aware the packaging, labeling, representations, comparisons, and omissions, were false and misleading, in Queens County.

## PARTIES

61.     Plaintiff Bethea is a citizen of Queens County, New York.

62.     Plaintiff Vazquez is a citizen of Queens County, New York.

63.     Plaintiff Spahn is a citizen of Suffolk County, New York.

64.     Defendant Sazerac Company Inc. is a New Orleans corporation with a principal place of business in Kentucky.

65.     Defendant is one of the world's largest seller of distilled spirits.

66. Defendant manufactures, markets, and sells Chi-Chi's Original Margarita, in versions based on tequila and triple sec, and based on malt alcohol.

67. Plaintiffs are like most consumers of alcoholic beverages, who prefer those based on distilled spirits to those based on brewing and fermentation, or malt alcohol, due to reasons including superior quality, health, and/or taste.

68. Plaintiffs are like all Americans who know a margarita is based on the distilled spirit of tequila and triple sec.

69. Plaintiffs are like all Americans, who even if they have never been to Chi-Chi's or even heard of it, they will recognize it is a Mexican-sounding name.

70. Plaintiffs are like all Americans who associate a margarita with Mexico.

71. Plaintiffs and consumers understood "Chi-Chi's Original Margarita," in gold and green labeling, corresponding to the key margarita ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime, consistent with common usage and dictionary definitions of a margarita, expecting it to have tequila and triple sec and/or awareness of the sale of Chi-Chi's Original Margarita containing tequila and triple sec.

72. Plaintiffs read and relied on the front label, Chi-Chi's "Original Margarita," in gold and green labeling, corresponding to the key margarita ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above

a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime.

73.     Plaintiffs relied on the omissions and/or failure to conspicuously identify the Product as a malt beverage, which lacked tequila and triple sec, especially in comparison to the sale of the distilled spirits version, which lacked tequila and triple sec.

74.     Plaintiffs were not aware that Defendant marketed a malt version of Chi-Chi's Original Margarita, which lacked tequila and triple sec.

75.     Plaintiffs figured there would be no purpose to sell anything other than a cocktail based on distilled spirits in a small bottle, because these are widely available.

76.     Plaintiffs did not expect the bottles of Chi-Chi's Original Margarita they bought would not have tequila and triple sec, but would be based on malt alcohol.

77.     Plaintiffs observed, knew, and/or were aware of Chi-Chi's Original Margarita, which contained tequila and triple sec.

78.     Plaintiffs were unable to compare the Chi-Chi's Original Margarita based on tequila and triple sec to the Chi-Chi's Original Margarita based on malt alcohol, when they bought malt alcohol version.

79.     Plaintiffs expected the Product to be the Chi-Chi's Original Margarita and/or contain the distilled spirit of tequila and triple sec, in more than a negligible

amount, and did not expect to buy a malt beverage.

80. Plaintiffs did not notice the statement of composition, in small print, which identified the Product as a malt beverage, because of the more prominent statements of Chi-Chi's Original Margarita, in gold and green labeling, corresponding to the key margarita ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime.

81. Plaintiffs observed the Product next to other miniature bottles of what appeared to be distilled spirit products such as Fireball, Parrot Bay Rum, and/or Southern Comfort.

82. Plaintiffs expected more than a "margarita" taste, but the distilled spirit of tequila and orange liqueur.

83. Plaintiff Bethea purchased the Product between April 2021 and April 2024, at grocery stores, big box stores, drug stores, warehouse club stores, independent retail stores, beverage stores, gas stations, gas station convenience stores, convenience stores, bodegas, and/or other similar locations, in New York, and/or other areas.

84. Plaintiff Vazquez purchased the Product between April 2021 and April 2024, at grocery stores, big box stores, drug stores, warehouse club stores, independent retail stores, beverage stores, gas stations, gas station convenience

stores, convenience stores, bodegas, and/or other similar locations, in New York, and/or other areas.

85.   Plaintiff Spahn purchased the Product between April 2021 and April 2024, at grocery stores, big box stores, drug stores, warehouse club stores, independent retail stores, beverage stores, gas stations, gas station convenience stores, convenience stores, bodegas, and/or other similar locations, in New York, and/or other areas.

86.   Plaintiffs bought the Product at or around the above-referenced price.

87.   Plaintiffs paid more for the Product than they would have had they known it was not a margarita, because it lacked tequila or triple sec, since it was a malt beverage, as they would not have bought it or would have paid less.

88.   The Product was worth less than what Plaintiffs paid, and they would not have paid as much, absent Defendant's false and misleading statements, omissions and/or comparisons.

89.   Plaintiffs chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components, relative to themselves and other similar versions or products.

## CLASS ALLEGATIONS

90.   Plaintiffs seek to represent the following class:

> All persons in New York who purchased the
> Product in New York during the statutes of

limitations for each cause of action alleged, expecting it to be a margarita, based on tequila and triple sec, instead of a malt beverage, without these ingredients.

91.    Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, members, and attorneys, and immediate family members of any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

92.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiffs and class members are entitled to damages.

93.    Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

94.    Plaintiffs are adequate representatives because their interests do not conflict with other members.

95.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

96.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

97.    The class is sufficiently numerous, with over 100 members, because the

Product has been sold throughout the State for several years with the representations, omissions, packaging, and labeling identified here, at grocery stores, big box stores, drug stores, warehouse club stores, independent retail stores, beverage stores, gas stations, gas station convenience stores, convenience stores, bodegas, and/or other similar locations, in this State and/or online, to citizens of this State.

98. Plaintiffs' Counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequate and fairly.

## CAUSES OF ACTION

### COUNT I
General Business Law ("GBL") §§ 349 and 350

99. Plaintiffs incorporate by reference paragraphs 1-45.[12]

100. The purpose of the GBL is to protect consumers against unfair and deceptive practices.

101. This includes making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

102. The GBL considers false advertising, unfair acts, and deceptive practices in the conduct of any trade or commerce to be unlawful.

103. Violations of the GBL can be based on other laws and standards related to consumer deception.

_____

[12] To the extent any incorporation by reference is required.

104. Violations of the GBL can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. 15 U.S.C. § 45 *et seq*.

105. A GBL violation can occur whenever any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq*., are violated.

106. A GBL violation can occur whenever the standards of unfairness and deception set forth and interpreted by the FTC or the federal courts relating to the FTC Act are violated.

107. Violations of the GBL can be based on public policy, established by norms, customs, statutes, law, or regulations.

108. A GBL violation can occur whenever any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices is violated.

109. In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations," including likeness to other similar products. 15 U.S.C. § 55(a)(1).

110. In considering whether the label and/or packaging of alcoholic beverages is misleading, it is required to consider not only representations made or suggested

by statements, images, and/or design, but also the extent to which this fails to prominently and conspicuously reveal facts relative to (1) the proportions or absence of certain ingredients, features, and/or attributes, (2) other facts concerning its attributes and characteristics, such as ingredients, quantity, size, amount, origin, type, and/or quality, and/or (3) likeness or similarity to other similar products, which are of material interest to consumers.

111. Defendant's false, misleading, and deceptive representations and omissions, and comparisons, with respect to the Product's contents, attributes, features, origins, amount, quantity, ingredients, comparisons, and/or quality, that it was the Chi-Chi's Original Margarita, based on tequila and triple sec, are material in that they are likely to influence consumer purchasing decisions.

112. This is because consumers prefer to buy alcoholic beverages based on distilled spirits instead of malt alcohol, for reasons related to health, taste, and/or quality.

113. The replacement of the distilled spirit of tequila and triple sec with malt alcohol, and almost identical labeling to the Chi-Chi's Original Margarita, is of material interest to consumers, because they prefer to buy alcoholic beverages based on distilled spirits instead of malt based alcohol, for reasons related to health, taste, and/or quality.

114. The Product could have included margarita ingredients like tequila and

triple sec, or conspicuously informed consumers that what they were buying was not the Chi-Chi's Original Margarita they expected, but marketed it similarly because this would capitalize on consumer demand for margaritas, distilled spirits, and/or the Chi-Chi's brand of margaritas.

115. The labeling of the Product violated the FTC Act and thereby violated the GBL, because the representations, omissions, packaging, labeling, and/or comparisons, "Chi-Chi's Original Margarita," in gold and green labeling, corresponding to the key margarita ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime, and/or awareness of the sale of Chi-Chi's Original Margarita containing tequila and triple sec, created the erroneous impression it consisted of the margarita ingredients of the distilled spirit of tequila and triple sec, when this was false, because it was a malt beverage.

116. The labeling, marketing, and comparisons of the Product violates laws, statutes, rules and regulations which proscribe unfair, deceptive, immoral, and/or unconscionable acts or practices, intended to protect the public, thereby violating the GBL.

117. The labeling of the Product violated the GBL because the representations, omissions, labeling, packaging, and/or comparisons, "Chi-Chi's Original Margarita," in gold and green labeling, corresponding to the key margarita

ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime, and/or awareness of the sale of Chi-Chi's Original Margarita containing tequila and triple sec, was unfair and deceptive to consumers.

118. The labeling of the Product violated the GBL because the representations, omissions, packaging, labeling, and comparisons, "Chi-Chi's Original Margarita," in gold and green labeling, corresponding to the key margarita ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime, and/or awareness of the sale of Chi-Chi's Original Margarita containing tequila and triple sec, was contrary to the ABC, which adopted, where applicable, other laws and regulations.

| Federal | State |
|---|---|
| 27 U.S.C. § 205(e) | ABC § 107-a(c) |
| 27 C.F.R. § 7.52(a) | |
| 27 C.F.R. § 7.53(a)(2) | |
| 27 C.F.R. § 7.63(a)(1) | |
| 27 C.F.R. § 7.63(a)(2) | 9 NYCRR § 84.1 |
| 27 C.F.R. § 7.64(b) | |
| 27 C.F.R. § 7.122(a) | |
| 27 C.F.R. § 7.141(b)(2) | |

119. Plaintiffs believed the Product would contain the distilled spirit of tequila and triple sec, based on because the label said, "Chi-Chi's Original Margarita," in gold and green labeling, corresponding to the key margarita ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime, and/or in light of awareness of the sale of Chi-Chi's Original Margarita containing tequila and triple sec, even though it lacked tequila and triple sec.

120. Plaintiffs paid more for the Product and would not have paid as much if they knew that it did not contain tequila and triple sec, because it was a malt alcohol beverage, and its alcohol was not from distillation but brewing and/or fermentation.

121. Plaintiffs seek to recover for economic injury, financial damages, and/or economic loss they sustained, based on the misleading labeling, packaging, and/or comparisons of the Product, a deceptive practice under the GBL.

122. Plaintiffs will produce evidence showing how they and consumers paid more than they would have paid for the Product, relying on Defendant's representations, omissions, packaging, labeling, and comparisons, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis, and/or other advanced methodologies.

123. As a result of Defendant's misrepresentations, omissions, and/or comparisons, Plaintiffs were injured and suffered economic and financial damages

by payment of a price premium for the Product, which is the difference between what they paid based on its labeling, packaging, representations, statements, omissions, comparisons, and/or marketing, and how much it would have been sold for without the misleading labeling, packaging, representations, statements, omissions, comparisons, and/or marketing identified here.

## <u>JURY DEMAND AND PRAYER FOR RELIEF</u>

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying Plaintiffs as representatives and the undersigned as Counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiffs' attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: May 24, 2024

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel (516) 268-7080
Fax (516) 234-7800
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiffs*

Spencer Sheehan
Sheehan & Associates P.C.


Chung Law Firm P.C.
James Chung
43-22 216th St
Bayside NY 11361
Tel: (718) 461-8808
jchung_77@msn.com

*Counsel for Plaintiffs*

## Certificate of Service

I certify that on May 24, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | Electronic Filing | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan