**Execution Copy**

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MALCOLM BETHEA, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>SAZERAC COMPANY, INC.<br><br>Defendant. | Case No.: 1:24-cv-03747-PCG |

**SETTLEMENT AGREEMENT**

Subject to the approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Class Action Settlement Agreement and Release, including the attached Exhibits, is entered into between **Plaintiffs** Malcolm Bethea, Joseph Vazquez, Mariahlee Spahn and Lisa Sibirtzeff on behalf of themselves and those similarly situated, and Defendant Sazerac Company, Inc.

## I. RECITALS

1.1 WHEREAS, on May 24, 2024, **Plaintiffs**[1] filed the above-captioned **Action** in the United States District Court for the Eastern District of New York against **Defendant** alleging violations of New York General Business Law §§ 349 and 350. All claims relate to certain of **Defendant**'s Chi-Chi's beverages, which were labeled with an "Original Margarita" statement, which **Plaintiffs** contend gave consumers the impression that the alcohol in the **Product**s was tequila and triple sec, when in fact it was not, but rather a malt liquor.

1.2 WHEREAS, the **Parties** have engaged in significant settlement negotiations that have included, but not limited to, discovery on a number of issues in the matter, including sales figures, marketing, and the ingredients in the **Products.**

[1] All bolded and capitalized terms are defined in Section II, *infra.*

1.3 WHEREAS, the **Parties** strongly disagree on the merits and viability of the claims set forth in the **Action**.

1.4 WHEREAS, **Plaintiffs** have not filed motions for class certification in any **Action**.

1.5 WHEREAS, **Defendant** denies all of the **Allegations** made in the **Action** and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged against it by **Plaintiffs** either on an individual basis, or on behalf of the putative classes. **Defendant** also denies that the claims asserted in the **Action** meet the requirements for class certification, other than for purposes of settlement. **Defendant** further denies that the evidence supports a finding of liability or monetary or equitable relief to **Plaintiffs**, any additional putative **Class Representative**, or any **Settlement Class Member**, with respect to any of the **Released Claims** or other **Allegations** made by **Plaintiffs**.

1.6 WHEREAS, **Plaintiffs** believe all claims are viable and certifiable as a class action.

1.7 WHEREAS, the **Parties**, and their respective counsel, taking into account the risks, uncertainties, delay, and expense involved in pursuing the **Action**, as well as other relevant considerations, have concluded that it is in the best interests of **Plaintiffs** and **Defendant** to compromise fully and finally settle all claims relating to the **Product**s.

1.8 WHEREAS, **Plaintiffs' Counsel** are experienced in litigating **Class Action** matters that assert claims like the claims asserted by **Plaintiffs** in the **Action**.

1.9 WHEREAS, **Class Counsel** has analyzed and evaluated the merits of all **Parties**' contentions and this settlement as it affects all **Parties** and the **Settlement Class Members.** Among the risks and uncertainties of the **Action** is the possibility that **Plaintiffs** will be unable to prove liability or damages (individually or on a class wide basis) at trial. **Plaintiffs** and **Class Counsel**, after taking into account the foregoing, along with the risks, uncertainties and costs of further prosecution of the **Action**, are satisfied that the terms and conditions of this **Agreement** are fair, reasonable, adequate, and equitable, and that a settlement and the prompt provision of meaningful benefits to the **Settlement Class Members** are in the best interests of the **Settlement Class Members**.

1.10 WHEREAS, **Defendant**, while continuing to deny all **Allegations**, and disclaiming any liability with respect to any and all claims asserted in the **Action**, has concluded that it is in Defendant's best interest to resolve the **Action** on the terms stated in this **Agreement**, in order to avoid further expense, inconvenience, and interference with ongoing business operations, and to dispose of burdensome litigation.

1.11 WHEREAS, the undersigned **Parties** agree, subject to approval by the **Court**, that the **Released Claims** asserted by **Plaintiffs** shall be fully and finally compromised, settled and released on the terms and conditions set forth in this **Agreement**. The **Parties** intend that the **Court** conditionally certify a **Class Action** for settlement and that this **Agreement** will encompass and end all pending, threatened, or possible litigation or claims of **Plaintiffs** against **Defendant** based on the subject matter of the **Action**.

1.12 WHEREAS, for purposes of settlement only, **Plaintiffs** will seek leave of **Court** to amend their complaint to assert claims on behalf of consum class.

1.13 WHEREAS, **Plaintiffs** and **Defendant** specifically agree that **Defendant**'s execution of this **Agreement**, and consent to the filing of the **Amended Complaint**, is not, and shall not be construed as, an admission by **Defendant**, or deemed to be evidence: (1) of the validity of any of the claims made by **Plaintiffs** or of any liability to **Plaintiffs**, as alleged in the **Action** or **Amended Complaint**; (2) that **Defendant** violated any state or federal law in any respect; or (3) that class certification of the claims asserted in the **Action** is appropriate under Fed. R. Civ. P. 23 or any analogous state law. Nothing in this **Agreement** shall constitute an admission of liability or be used as evidence of liability, by or against any **Party** hereto.

NOW, THEREFORE, without (a) any admission or concession on the part of **Plaintiffs** about the likelihood of success at trial, on appeal, or in other motions practice, or (b) any admission or concession of the merit of the claims asserted in the **Action** or of liability or wrongdoing or the lack of merit of any defense whatsoever by **Defendant**, it is hereby stipulated and agreed by the undersigned, on behalf of **Plaintiffs**, the **Settlement Class Members**, and **Defendant**, that this **Action** and all **Released Claims** of the **Settlement Class Members** be settled, compromised, and

finally adjudged, subject to **Court** approval as required by Federal Rule of Civil Procedure 23, on the terms and conditions set forth herein.

The recitals stated above are true and accurate and are hereby made a part of this **Agreement**.

## II. DEFINITIONS

Capitalized terms in this **Agreement** shall be defined as follows:

2.1 "**Action**" means the matter of *Bethea et al. v. Sazerac Co.*, case no. 1:24-cv-03747-PCG (E.D.N.Y.)

2.2 "**Agreement**" or "**Settlement Agreement**" means this Settlement Agreement, including all exhibits hereto.

2.3 "**Allegations**" means the allegations as asserted in the **Complaint**, and the **Amended Complaint**.

2.4 "**Amended Complaint**" means the Amended Complaint for Settlement (attached hereto as Exhibit E), that makes allegations on behalf of consumers who bought the product in the two states in which the Product was sold duing the Class Period.

2.5 "**Attorneys' Fees and Costs**" means such funds as may be awarded by the **Court** to **Class Counsel** for their work, efforts, and expenditures in connection with the respective **Actions** and settlement, including fees, costs, and expenses of experts, consultants, or other individuals retained by, or who assisted **Class Counsel** in connection with the respective **Action** and settlement, as described more particularly in Section V of this Agreement.

2.6 "**Claim Administrator**" means, subject to **Court** approval, Simpluris, unless another third-party administrator is later agreed to by the **Parties** in writing and approved by the **Court**.

2.7 "**Claim Filing Deadline**" means ninety (90) days after the initial date set for the **Final Approval** hearing.

2.8 "**Claim Form(s)**" means a form in substantially the same form as Exhibit B hereto to be used by a **Settlement Class Member** to make a **Settlement Claim** under the **Settlement.**

2.9 "**Claimant**" means a **Settlement Class Member** who submits a **Settlement Claim** for payment as described in Section III of this **Agreement**.

2.10 "**Class Action**" is to be given the meaning in Federal Rule of Civil Procedure 23(a) and 23(b)(3).

2.11 "**Class Counsel**" means collectively Sheehan & Associates, P.C., Reese LLP, and the Law Office of James Chung.

2.12 "**Class Notice**" means the notice to the Class to be disseminated by the **Claim Administrator** as forth in the **Notice Plan** described in the declaration of the Claims Administrator filed with the Motion for Preliminary Approval and as anticipated to be approved in accordance with the **Court**'s **Preliminary Approval**.

2.13 "**Class Period**" means the period of time from March 24, 2021 through the date of the **Preliminary Approval** Order.

2.14 "**Class Representatives**" means **Plaintiffs** Malcolm Bethea, Joseph Vazquez, Mariahlee Spahn and Lisa Sibirtzeff, collectively.

2.15 "**Court**" means the United States District Court, Eastern District of New York.

2.16 "**Defendant**" means Sazerac Company, Inc.

2.17 "**Defendant's Counsel**" means Dorsey Whitney LLP including, but not limited to, Creighton R. Magid and Elizabeth Rozon-Baksh.

2.18 "**Effective Date**" means the date on which the **Final Approval** is final and no longer subject to any further appeal as of right, or by discretionary review.

2.19 "**Escrow Account**" means the separate, interest-bearing escrow account to be established by the **Claim Administrator** at a bank to hold funds received in connection with the administration of this **Settlement**.

2.20 "**Final Approval**" means the order and judgment entered by the **Court** approving this **Agreement** and, certifying a class for settlement purposes.

2.21 "**Household**" means all **Settlement Class Members** who currently occupy or during the **Class Period** occupied the same dwelling unit.

2.22 "**Long Form Notice**" means notice to **Settlement Class Members** in substantially the same form as Exhibit C.

2.23 "**Motion for Preliminary Approval**" means the motion filed by Plaintiffs seeking preliminary approval of the **Settlement**.

2.24 "**Notice Date**" means the day on which the **Claim Administrator** initiates the **Online Notice**.

2.25 "**Notice Plan**" means the **Parties** and **Claim Administrator**'s plan to provide the **Settlement Class Members** with notice of Settlement.

2.26 "**Online Notice**" means notice to **Settlement Class Members** in substantially the same form as Exhibit D.

2.27 "**Opt-Out and Objection Deadline**" means thirty-five (35) days prior to the initially scheduled hearing date on **Final Approval**.

2.28 "**Parties**" means **Plaintiffs** and **Defendant**, collectively.

2.29 "**Parties' Counsel**" means collectively **Class Counsel** and **Defendant's Counsel.**

2.30 "**Party**" means any one of **Plaintiffs** or **Defendant**.

2.31 "**Person(s)**" means any natural person.

2.32 "**Plaintiffs**," means Malcolm Bethea, Joseph Vazquez, Mariahlee Spahn and Lisan Sibirtzeff.

2.33 "**Preliminary Approval**" means issuance of an order, granting preliminary approval to this Agreement as within the range of possible **Final Approval**, approving **Class Notice** to the **Settlement Class Members** as described in Section IV below, and setting a hearing to consider **Final Approval** of the settlement and any objections thereto.

2.34 "**Product(s)**" means margarita malt beverages sold under the Chi-Chi's brand name. A complete list of the **Products** is attached hereto in Exhibit A. For sake of clarity, the **Products** do not include any of **Defendant's** other beverages – including, but not limited to, Fireball malt, Parrot Bay malt, or Southern Comfort malt – other than Chi-Chi's malt.

2.35 "**Released Claims**" means any and all claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that any Plaintiff or **Settlement Class Member** has, has had, or may have in the future against the **Released Parties** arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in, or that could have been alleged in the **Action** regarding the labeling on the **Products**. For sake of clarity, **Released Claims** do not cover claims, if any, for bodily injury arising out of a **Settlement Class Member's** use of the **Products**. Additionally, for sake of clarity, the **Released Claims** do not cover any of **Defendant's** other beverages – including, but not limited to, Fireball malt, Parrot Bay malt, or Southern Comfort malt – other than Chi-Chi's malt.

2.36 "**Released Parties**" means **Defendant** and each and all of its respective present or former, direct or indirect parent companies, subsidiaries, shareholders, owners, affiliates, predecessors, successors and assigns, and each and all of their respective present or former members, officers, directors, managers, employees, employers, attorneys, accountants, financial advisors, commercial bank landers, insurers, investment bankers, representatives, general and limited partners and partnerships, suppliers, co-manufacturers, distributors, retailers of the Product(s), heirs, executors, administrators, successors, affiliates, and assigns of each of them. As well as any trust of which **Defendant** is a settlor, trustee, or beneficiary.

2.37 "**Releasing Parties**" means **Plaintiffs** and all **Settlement Class Members** who have not validly and timely opted out of the **Settlement**, and all of their respective spouses, children, executors, representatives, guardians, wards, heirs, estates, successors, bankruptcy estates, bankruptcy trustees, predecessors, agents, and assigns, and all those who claim through them or who assert or could assert claims on their behalf.

2.38 "**Service Payments**" means any award sought by application to and approval by the **Court** that is payable to the **Class Representatives** to compensate them for their efforts in bringing the **Action** and achieving the benefits of this settlement on behalf of the **Settlement Class Members**.

2.39 "**Settlement**" means the settlement embodied in this **Agreement.**

2.40 "**Settlement Benefit(s)**" means the benefits provided to **Settlement Class Members** as set forth in Section III of this Agreement.

2.41 "**Settlement Claim**" means a claim for **Settlement Benefit**s submitted under Section III of this Agreement.

2.42 "**Settlement Class Member(s)**" means all persons in the United States who purchased any of the **Product(s)** at retail locations in New York and/or Pennsylvania during the **Class Period** for personal or household use. Excluded from this definition are (a) the **Released Parties**; (b) all distributors, wholesalers, retailers, and licensors of the **Product(s)**; (c) judges presiding over the **Action** and any members of their immediate families and/or staff; (d) **Persons** who made a valid, timely request for exclusion; and (e) any government entity.

2.43 "**Settlement Fund**" means the aggregate value of One Million and One Hundred Thousand Dollars and No Cents ($1,100,000) that may be distributed to **Settlement Class Members** who submit valid and timely **Claim Form**s, pursuant to Section III. The **Settlement Fund** will first be used to pay for **Class Notice** and administration costs or other costs pursuant to the terms of Section III of this Agreement and all **Attorneys' Fees and Costs** and **Service Payments**, prior to any distribution from the payments to **Settlement Class Members**.

2.44 "**Settlement Website**" means an internet website created and maintained by the **Claim Administrator**, the URL of which shall be specified in the **Notice Plan**.

2.45 **"Submitting Class Member"** means the **Settlement Class Membe**r submitting a **Settlement Claim** on behalf of the **Settlement Class Member's Household**.

2.46 "**Termination Date**" means the date that the **Agreement** is terminated as set forth in Section 8.3.

2.47 "**Valid Claim**" means a **Settlement Claim** submitted in compliance with Section III of this Agreement and determined to be valid by the **Claim Administrator**, and as further described in that Section.

## III. SETTLEMENT BENEFITS AND CLAIMS ADMINISTRATION

### Monetary Compensation

3.1 Subject to the rights and limitations set forth in this Agreement, every **Household** shall have the right to submit a **Settlement Claim** for **Settlement Benefits.** A **Settlement Claim** shall be a **Valid Claim** only if submitted on the **Claim Form** pursuant to, and in compliance with, the procedures set forth in this Section III. Submission of a **Settlement Claim**, regardless of whether it is determined to be a **Valid Claim**, shall confer no rights or obligations on any **Party**, any **Settlement Class Member**, or any other **Person**, except as expressly provided herein.

3.2 At the election of the **Household**, **Claim Form**s may be submitted in paper via regular U.S. mail or online at the **Settlement Website**. **Claim Form**s must be postmarked or submitted online no later than the **Claim Filing Deadline**. **Claim Form**s postmarked or submitted online after that date will not be **Valid Claim**s. For **Claim Form**s that are submitted online, the **Household** shall have the opportunity to upload Proof of Purchase image files (e.g., .jpg, .tiff, .pdf); to preview and confirm information entered in the **Claim Form** prior to submitting the **Settlement Claim**; and to print a page immediately after the **Claim Form** has been submitted showing the information entered, the names of image files uploaded, and the date and time the **Claim Form** was received.

3.3 On the **Claim Form**, the **Submitting Class Member** must provide and certify the truth and accuracy of the following information under the penalty of perjury by signing the **Claim Form** physically, or by e-signature, to be considered a **Valid Claim**:

(a) The **Submitting Class Member**'s name and mailing address;

(b) The **Submitting Class Member**'s email address (unless the **Submitting Class Member** submits a **Claim Form** by mail, in which case an email address is optional, or the **Submitting Class Member** attests that he or she does not have an e-mail address);

(c) That the **Submitting Class Member** and/or other **Settlement Class Members** within the **Submitting Class Member's Household** made the purchase or purchases directly at a retail establishment in New York or Pennsylvania or online;

(d) That the claimed purchases were not made for purposes of resale, commercial use or for any purpose other than household use; and

(e) For each claimed purchase that is not supported by Proof of Purchase, the number of **Product(s)** purchased.

3.4 Subject to the total dollar value cap in **Settlement Benefits** as provided in Section 3.6, each **Household** that submits a **Valid Claim**, as determined by the **Claim Administrator**, shall receive a **Settlement Benefit** as follows:

(a) A **Household** that submits a **Valid Claim** shall receive $4.00 for the first **Product** submitted and $1.25 for each additional 6.3 ounce **Product** and $2.50 for each additional 50.7 once **Product** submitted with or without a Proof of Purchase. For the 6.3 ounce Products, there is a cap of $15.25 for which a **Household** may seek compensation without Proof of Purchase and a cap of $26.50 for which a **Household** may seek compensation with Proof of Purchase. For the 50.7 ounce Product, there is a there is a cap of $16.50 for which a **Household** may seek compensation without Proof of Purchase and a cap of $26.50 for which a **Household** may seek compensation with Proof of Purchase.

(b) These payments are subject to the *pro rata* distribution discussed below in section 3.8.

(c) **Valid Claims** with Proof of Purchase and without Proof of Purchase shall be cumulative. **Valid Claims** for 6.3 ounce and 50.7 **Products** shall also be cumulative. For example, a **Houshold** that makes a **Valid Claim** for four 6.3 ounce **Products** and one 50.7 ounce **Product** without Proof of Purchase and five 6.3 ounce **Products** and eight 50.7 ounce **Products** with Proof of Purchase shall receive $4.00 for the first Product, $3.75 for the additional three 6.3 ounce Products without Proof of Purchase, $2.50 for the additional one 50.7 ounce Products without Proof of Purchase and $6.25 for the five 6.3 ounce Products with Proof of Purchase and $20.00 for the eight 50.7 ounce Products with Proof of Purchase, for a total of $36.50. These payments are subject to the *pro rata* distribution discussed below in section 3.8.

(d) The total payment due to the **Household** shall be provided electronically or in a single check payable to the **Submitting Class Member**, as elected by the **Submitting Class Member**.

3.5 Each **Household** is limited to and may only submit a single **Claim Form**.

3.6 The total dollar value of **Valid Claim**s submitted will be capped at the amount of money remaining in the **Settlement Fund** after the costs of notice, **Service Payments**, and **Attorneys' Fees and Costs** have been subtracted.

3.7 **Settlement Fund**.

(a) **Defendant**, as its sole, total, and exclusive financial obligation with respect to the **Settlement**, shall, within ten (10) business days after the entry of the **Preliminary Approval** Order, pay into an **Escrow Account** established by the Settlement **Claim Administrator** and approved by the **Parties** the sum of One Million and One Hundred Thousand Dollars and No Cents ($1,100,000), which sum shall constitute the **Settlement Fund**.

(b) The **Settlement Fund** at all times will be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-1. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the **Settlement Fund** or otherwise, including any taxes or tax detriments that may be imposed upon **Defendant** with respect to income earned by the **Settlement Fund** for any period during which the **Settlement Fund** does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), will be paid out of the **Settlement Fund**. **Defendant** and its counsel, and **Plaintiffs** and **Class Counsel**, will have no liability or responsibility for any of the Taxes. The Parties shall cause the **Settlement Fund** to indemnify and hold harmless **Defendant**, **Defendant's Counsel**, **Plaintiffs,** and **Class Counsel**, for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

(c) In no circumstances shall **Defendant**'s total contribution to the **Settlement Fund** exceed One Million and One Hundred Thousand Dollars and No Cents ($1,100,000) in the aggregate. Under this **Agreement**, the **Parties** agree that **Defendant**'s contribution to the

**Settlement Fund** will encompass the full extent of the **Released Parties**' monetary payment in full consideration for the Releases and covenants not to sue set forth in Section VII of this Agreement. These payments, pursuant to the terms and conditions of this Agreement, and any other non-monetary obligations of and considerations due from **Defendant** set forth in this Agreement, will be in full satisfaction of all **Released Claims**.

(d) **Defendant** is not obligated (and will not be obligated) to compute, estimate, or pay any taxes on behalf of **Plaintiffs**, **Class Counsel**, any **Settlement Class Member**, or the **Claim Administrator**, or otherwise administer or support the implementation of the Settlement except as set forth herein.

(e) In the event the **Effective Date** does not occur, or in the event that a **Termination Date** does occur, all amounts paid into the **Settlement Fund**, less amounts incurred for claims administration and notice up to the date it is determined that the **Effective Date** will not occur, shall be returned to **Defendant**. In no other event shall the amounts paid into the **Settlement Fund** revert to **Defendant**.

3.8 Excess or Insufficient Funds in the **Settlement Fund**.

(a) The **Claim Administrator** shall determine each authorized **Claimant**'s payment based upon each **Claimant**'s **Claim Form** and the total number of **Valid Claim**s in accordance with this Section.

(b) Excess Funds. If, after calculating the payment amount for all **Valid Claims**, value remains in the **Settlement Fund**, such remaining funds shall increase eligible **Settlement Class Members**' claimed relief on a *pro rata* basis.

(c) Insufficient Funds. If the total amount of the **Valid Claims** payments exceeds the value of the **Settlement Fund**, such claims will be reduced on a *pro rata* basis.

(d) *Cy Pres*. It is the **Parties**' intent to distribute the entirety of the **Settlement Fund** to **Settlement Class Members**. If, after distributing the funds from the **Settlement Fund** in accordance with the **Settlement**, including the payment of notice and administration costs, any cash remains in the **Settlement Fund**, including cash not disbursed due to uncashed checks, the

remaining funds will be distributed to Mothers Against Drunk Driving ("MADD") as a *cy pres* award. Under no circumstances, except as delineated in Section 3.7(f), *supra*, shall any funds remaining in the **Settlement Fund** revert or otherwise be returned to **Defendant.**

3.9 The **Claim Administrator** shall be solely responsible for, among other things, providing notice as set forth in the **Notice Plan**, processing **Claim Form**s, administering the **Settlement Website**, administering the exclusion process, administering the **Settlement Benefit** claims process described herein (including receiving and maintaining on behalf of the **Court** and the **Parties** any **Settlement Class Member** correspondence regarding requests for exclusion from the **Settlement**), and such other duties as may be reasonably necessary to administer the terms of this Agreement. The **Claim Administrator** shall not approve duplicate or multiple claims for the same purchase but shall deem valid only one **Claimant** for each **Household**. The **Claim Administrator** will use adequate and customary procedures and standards to prevent the payment of fraudulent claims and to pay only **Valid Claims**. The **Claim Administrator** and **Parties** shall have the right to audit claims, and the **Claim Administrator** may request additional information from **Claimant**s. If any fraud is detected or reasonably suspected, the **Claim Administrator** may require further information from the **Submitting Class Member** or deny **Settlement Claims**, subject to the supervision of the **Parties** and ultimate oversight by the **Court**.

3.10 The determination of validity of **Settlement Claims** shall occur within a reasonable time. The **Claim Administrator** shall have reasonable discretion to approve or deny each claim. **Class Counsel** and **Defendant's Counsel** shall have the right to audit **Settlement Claim**s and to challenge the **Claim Administrator**'s decision by motion to the **Court**. **Class Counsel**'s or **Defendant's Counsel**'s choice not to audit the validity of any one or more **Claim Forms** shall not constitute or be construed as a waiver or relinquishment of any audit or other rights as to any other **Claim Form**s, individually or as a group, and similarly, shall not be construed as a waiver or relinquishment by such **Party** as to any of its audit and other rights under this Agreement. No **Person** shall have any claim against **Plaintiffs**, **Defendant**, **Class Counsel**, **Defendant's Counsel**, or the **Claim Administrator** based on any determination of a **Valid Claim**, distributions or

payments made in accordance with this Agreement and the exhibits hereto. Neither **Plaintiffs**, nor **Defendant**, nor their respective counsel, shall have any liability whatsoever for any act or omission of the **Claim Administrator**.

3.11 Within twenty (20) days after the **Claim Filing Deadline**, the **Claim Administrator** shall notify by email all **Submitting Class Members** whose **Settlement Claim**s are denied of the reason(s) for the denial, using the email address (if any) or physical address provided by the **Submitting Class Member** on the **Claim Form**. If no email address or physical address is provided by the **Submitting Class Member** on the **Claim Form**, the Administrator shall not have an obligation to provide the **Submitting Class Member** any notification of the denial of the **Settlement Claim** or the reasons for denial.

3.12 **Valid Claim**s shall be paid electronically or by check to the **Submitting Class Member** and mailed to the address provided on the **Claim Form**, as updated in the National Change of Address Database, no more than one hundred and eighty (180) days after the **Effective Date**.

3.13 All settlement payments shall be subject to a ninety (90) days void period, after which the payments shall no longer be negotiable. Notice of the void period shall be printed on the check, if sent by mail, or on any accompanying or confirmatory correspondence, if funds are sent electronically. If a settlement payment is not negotiated, the **Household** shall not be entitled to any further payment under this **Agreement**. If the check is returned as undeliverable, the **Claim Administrator** shall send an email to the **Submitting Class Member**, if an email address was provided with the **Settlement Claim**, to attempt to obtain an updated address, and if obtained, shall mail the check to the new address, but shall have no other obligation to skip-trace or obtain an updated address. The return or failure to cash checks shall have no effect on a **Settlement Class Member**'s release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

3.14 No deductions for taxes will be taken from any **Settlement Benefit** at the time of distribution. **Settlement Class Members** are responsible for paying all taxes due on such

**Settlement Benefit**s. All **Settlement Benefit** payments shall be deemed to be paid solely in the year in which such payments are actually issued. The **Parties' Counsel** and/or the **Parties** do not purport to provide legal advice on tax matters to each other or **Settlement Class Members**. To the extent this Agreement, or any of its exhibits or related materials, is interpreted to contain or constitute advice regarding any U.S. Federal or any state tax issue, such advice is not intended or written to be used, and cannot be used, by any **Person** for the purpose of avoiding penalties under the Internal Revenue Code or any state's tax laws.

3.15 All fees and expenses incurred by the **Claim Administrator** in administering **Settlement Claim**s and performing the other tasks set forth in this Settlement Agreement shall be paid from the **Settlement Fund**. Any interest that accrues on funds held in the **Escrow Account** shall be used to pay settlement administration expenses. The **Claim Administrator** has represented to the **Parties** that its fees for administering this Settlement are estimated to be approximately $53,000.

## IV. NOTICE

4.1 The **Claim Administrator** will facilitate the notice process by assisting the **Parties**, including by providing notice of this settlement to the appropriate federal and state officials in the United States, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice"). The **Claim Administrator** shall serve notice of the **Agreement** that meets the requirements of 28 U.S.C. § 1715 on the appropriate federal and state officials no later than ten (10) business days after Plaintiff files the Motion for **Preliminary Approval**. The **Claim Administrator** will file a certification with the **Court** stating the date or dates on which the CAFA Notice was sent. **Defendant** will provide **Class Counsel** with any substantive responses received in response to any CAFA Notice.

4.2 Prior to the **Notice Date**, the **Claim Administrator** shall establish the **Settlement Website**, which shall contain the **Long Form Notice** in a downloadable PDF format; answers to frequently asked questions; a Contact Information page that includes the address for the **Claim Administrator** and addresses and telephone numbers for **Class Counsel** and **Defendant's**

**Counsel**; the **Agreement**; the signed order of **Preliminary Approval**; a downloadable and online version of the **Claim Form**; a downloadable and online version of the form by which **Settlement Class Members** may exclude themselves from the **Settlement**; and (when they become available) the motion for **Final Approval** and **Plaintiffs**' application(s) for **Attorneys' Fees and Costs** and **Service Award**, and any Order on **Final Approval**.

4.3 The **Claim Administrator** will terminate the **Settlement Website** two-hundred and forty (240) days after (1) the **Effective Date**, or (2) the **Termination Date**, whichever is applicable.

4.4 Notice to the **Settlement Class Members** shall be provided on websites and/or social media platforms chosen by the **Claim Administrator** and approved by the **Parties' Counsel** and accessible to desktop and mobile users, so that overall notice of the Settlement is reasonably calculated to apprise the **Settlement Class Members** of the **Settlement**. Such notice shall begin no later than thirty (30) days after **Preliminary Approval**. No later than fifteen (15) days prior to the hearing on **Final Approval**, the **Claim Administrator** shall submit a declaration to the **Court** under penalty of perjury explaining how the media were chosen and attesting to the number of impressions delivered. The **Claim Administrator** shall retain a record of all notice-related materials and procedures.

4.5 The **Claim Administrator** shall establish and maintain a toll-free telephone helpline, available 24 hours per day, where callers may obtain information about the Settlement.

4.6 The **Parties' Counsel** shall supervise the **Claim Administrator** in the performance of the notice functions set forth in this Section IV.

4.7 At least fifteen (15) days prior to the **Final Approval** hearing referenced in Section VI of this Agreement, the **Claim Administrator** shall certify to the **Court** that it has complied with the notice requirements set forth herein.

## V. ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVES' PAYMENTS

5.1 Attorneys' Fees, Costs, and Expenses. No later than thirty-five (35) days prior to the **Opt-Out and Objection Deadline**, **Class Counsel** shall file their motion for payment of **Attorneys' Fees and Costs** and payment of **Service Payments** to the **Class Representatives**., **Class Counsel** may apply to the Court for payment from the **Settlement Fund** of up to one-third (1/3) of the **Settlement Fund**, or $366,666.66, for **Class Counsel's** work in the Action. **Class Counsel** shall also be allowed to apply for a separate payment for reimbursement of costs and expenses, which shall be paid as part of **Attorneys' Fees and Costs** paid to **Class Counsel**, and which shall also be paid solely from the **Settlement Fund**. **Class Counsel** submits to the jurisdiction of the **Court** for the enforcement of this provision of the **Settlement Agreement** and for enforcement of all other provisions of this **Settlement Agreement**. **Defendant** retains the right to object to **Class Counsel**'s entitlement to such an award or to the amount of the award sought by **Class Counsel**.

5.2 **Class Representatives' Service Payments**. No later than thirty-five (35) days prior to the **Opt-Out and Objection** Deadline,, the **Class Representatives** may apply to the **Court** for **Service Payments** in an amount of $5,000 for each **Class Representative** (for a total of $20,000), subject to approval by the **Court**, as compensation for the work the **Class Representatives** performed to represent the class. Service award payments also shall be paid out of the **Settlement Fund**.

5.3 **Defendant** shall be responsible for paying its own attorneys' fees and expenses.

5.4 Any **Attorneys' Fees and Costs** awarded to **Class Counsel** shall be paid to **Class Counsel** from the **Settlement Fund** within thirty (30) calendar days after the **Effective Date**.

5.5 Any **Court**-approved **Service Payments** shall be paid to the **Class Representatives** from the **Settlement Fund** within thirty (30) calendar days after the **Effective Date**.

5.6 Court approval of attorneys' fees and costs sought by **Class Counsel** or of service payments sought by **Plaintiffs**, or any denial, decrease, or modification thereof by the Court or

on appeal shall not prevent this **Settlement f**rom becoming final and effective if all other aspects of the Final Judgment have been approved, and the remainder of the terms of this **Settlement** shall remain in effect.

## VI. CLASS SETTLEMENT PROCEDURES

6.1 Class Certification. The **Parties** agree that, for purposes of this settlement only, the **Action** shall be certified as a **Class Action** pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) with **Plaintiffs** as the **Class Representatives** and **Plaintiffs' Counsel** as **Class Counsel**.

6.2 In the event the **Agreement** is not finally approved, or is terminated, canceled, or fails to become effective for any reason, the certification of the **Class Action** shall be vacated and shall be null and void *ab initio*, and the **Action** shall proceed as if the **Class Action** had not been certified, and the **Parties** will be restored to their respective places in the **Action** as of the date of this **Agreement**. **Defendant**'s conditional consent herein to certification of the **Class Action** shall not be used against **Defendant** by any **Party** or non-party for any purpose in the **Action** or any other litigation, lawsuit, or proceeding of any kind whatsoever.

6.3 Settlement Approval. Contemporaneously with the filing of this **Agreement**, **Plaintiffs** shall move for an order granting **Preliminary Approval** to this Agreement as within the range of possible **Final Approval**; approving **Class Notice** to the **Settlement Class Members** as described in Section IV above; and setting a hearing to consider **Final Approval** of the **Settlement** and any objections thereto. **Defendant** shall have no obligation to make separate filings in support of the motion but may do so at its election after the motion has been filed. **Defendant's Counsel** shall appear at the hearing on behalf of **Defendant** to confirm their agreement with the terms of the settlement as provided herein. The **Parties** agree to the form and substance of the Proposed Order of **Preliminary Approval**, attached hereto as Exhibit F.

6.4 Amended Complaint for Settlement. Solely for purposes of implementing this Agreement and effectuating the **Settlement**, the **Parties** agree and stipulate that:

(a) **Plaintiffs** shall seek leave of **Court** to file the **Amended Complaint** without material changes to the version attached hereto as Exhibit E, and **Defendant** shall consent to such amendment, solely for purposes of this settlement, pursuant to Fed. R. Civ. P. 15(a)(2). The motion for leave to file the **Amended Complaint** shall be filed concurrently with the motion for **Preliminary Approval** of the Settlement so that the **Amended Complaint** may become operative upon the **Court**'s **Preliminary Approval** of the **Settlement**.

(b) If for any reason **Final Approval** of the **Settlement** does not occur, the **Amended Complaint** shall be stricken from the record and the operative complaint shall be the original complaint (ECF No. 1) filed in the **Action.**

6.5 <u>Final Approval Order and Judgment</u>. No later than thirty-five (35) days prior to the **Opt-Out and Objection Deadline**, or otherwise in accordance with the **Court**'s schedule for the **Final Approval** Hearing, **Plaintiffs** shall file their Motion for **Final Approval** of the **Settlement**. **Plaintiffs** shall move for the entry of an order of **Final Approval**, granting **Final Approval** of this **Settlement** and holding this **Agreement** to be final, fair, reasonable, adequate, and binding on all **Settlement Class Members** who have not excluded themselves as provided below, and ordering that the settlement relief be provided as set forth in this **Agreement**, ordering the releases as set forth in Section VII, below, and entering judgment in this case. **Plaintiffs** shall file any reply in support of the Motion for **Final Approval** no later than fourteen (14) days before the **Final Approval** Hearing. **Defendant** shall have no obligation to make separate filings in support of the motion. **Defendant's Counsel** shall appear at the hearing to confirm **Defendant**'s agreement with the terms of the Settlement as provided herein.

6.6 <u>Exclusions and Objections</u>. The Notice shall advise prospective **Settlement Class Members** of their rights to forego the benefits of this **Settlement** and to pursue an individual claim; to object to this **Settlement** individually or through counsel; and, if they object, to appear at the **Final Approval** hearing.

6.7 If any **Settlement Class Member** wishes to object to the settlement, the **Settlement Class Member** must submit a written objection to the **Claim Administrator**. Objections must be

delivered to the **Claims Administrator** and postmarked by the **Opt-Out and Objection Deadline** or they shall not be valid. The **Parties** may respond to any objection to the **Settlement** with appropriate arguments and evidence.

6.8 If any **Settlement Class Member** wishes to be excluded from (in other words, opt out of) this Settlement, the **Settlement Class Member** may do so by completing the exclusion form on the **Settlement Website**; downloading and submitting to the **Claim Administrator** a completed exclusion form; or submitting a valid request to exclude, as described in the **Long Form Notice**, to the **Claim Administrator**. Requests to exclude must be delivered to the **Claims Administrator** (in case of electronic submission) or postmarked (in case of a paper submission via the U.S. Post Office or other mail service) by the **Opt-Out and Objection Deadline** or they shall not be valid. A **Settlement Class Member** who elects to exclude themselves from this **Settlement** shall not be permitted to object to this **Settlement** or to intervene. Any **Settlement Class Member** who does not submit a timely request for exclusion shall be bound by all subsequent proceedings, orders, and the **Final Approval** in the **Action** relating to this **Settlement** and **Agreement**, even if he or she has pending, or subsequently initiates, litigation, arbitration, or any other proceeding against **Defendant** relating to the **Released Claims**.

6.9 The proposed **Preliminary Approval** order and **Long Form Notice** will provide that any **Settlement Class Member** wishing to object or exclude themselves who fails to properly or timely file or serve any of the requested information and/or documents will be precluded from doing so.

6.10 Immediately upon receipt of any objection, the **Claim Administrator** shall forward the objection and all supporting documentation to counsel for the **Parties**. At least twenty-eight (28) days prior to the hearing on **Final Approval**, **Class Counsel** shall file all such objections and supporting documentation with the **Court** along with any response to the objection made by the **Parties**.

6.11 At least fifteen (15) days prior to the hearing on **Final Approval**, the **Claim Administrator** shall prepare a list of the names of the **Person**s who, pursuant to the **Long Form Notice**, have excluded themselves from the **Class Action Settlement** in a valid and timely manner, and **Class Counsel** shall file that list with the **Court**.

6.12 A **Settlement Class Member** who objects to the **Settlement** may also submit a **Claim Form** on or before the **Claim Filing Deadline**, which shall be processed in the same way as all other **Claim Form**s. A **Settlement Class Member** shall not be entitled to an extension to the **Claim Filing Deadline** merely because the **Settlement Class Member** has also submitted an objection.

6.13 If a **Settlement Class Member** submits both an objection and an exclusion request, the exclusion shall take precedence and be considered valid and binding, and the objection shall be deemed to have been sent by mistake and rejected.

6.14 Effect if Settlement Not Approved or Agreement is Terminated. This **Agreement** was entered into only for purposes of settlement. In the event that **Preliminary Approval** or **Final Approval** of this **Settlement** and this **Agreement** does not occur for any reason (other than a denial, reduction, or modification of the attorney's fees that **Class Counsel** will seek under Section 5.1 or denial, reduction, or modification of the service payments sought by **Plaintiffs**), or if **Final Approval** is reversed on appeal (other than a denial, reduction, or modification of the attorney's fees that **Class Counsel** will seek under Section 5.1 or denial, reduction, or modification of the service payments sought by **Plaintiffs**), then no term or condition of this **Agreement,** or any draft thereof, or discussion, negotiation, documentation, or other part or aspect of the **Parties**' settlement discussions shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the **Action**, or in any other proceeding.

## VII. RELEASES

7.1 Upon the **Effective Date** and by operation of the judgment, the **Releasing Parties** shall have fully, finally, and forever released, relinquished, and discharged against the **Released Parties** all **Released Claims** (including, without limitation, any unknown claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the **Action** or the **Released Claims**.

7.2 No Admission of Liability. This **Agreement** reflects, among other things, the compromise and settlement of disputed claims among the **Parties** hereto, and neither this **Agreement** nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out this **Agreement** are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any **Party**. **Defendant** expressly denies the **Allegations** of the **Action,** including the **Amended Complaint**. Neither this **Agreement,** nor the fact of **Settlement**, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by the **Released Parties**, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by the **Released Parties**. The **Released Parties** may file the **Agreement** and/or the **Final Approval** order in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.3 This **Agreement** and all negotiations, correspondence and communications leading up to its execution will be deemed to be within the protection of Federal Rule of Evidence 408 and any analogous state or federal rules or principles.

## VIII. ADDITIONAL PROVISIONS

8.1 Best Efforts. Subject to the limitations expressed herein, the **Parties' Counsel** shall use their best efforts to cause the **Court** to give **Preliminary Approval** to this **Agreement** and **Settlement** as promptly as practicable, to take all steps contemplated by this **Agreement** to effectuate the **Settlement** on the stated terms and conditions, to cooperate in addressing any objections, and to obtain **Final Approval** of this **Agreement**. The **Parties** and **Parties' Counsel** shall not encourage anyone directly or indirectly to opt out or object. If the **Court** requires changes to the **Agreement** as a prerequisite to **Preliminary Approval** or **Final Approval**, the **Parties** shall negotiate in good faith regarding such changes.

8.2 Changes of Time Periods. The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the **Court** or by the written agreement of **Class Counsel** and **Defendant's Counsel**, without notice to **Settlement Class Members** except that the **Claim Administrator** shall ensure that such dates are posted on the **Settlement Website**.

8.3 Termination Rights. Either **Party** may unilaterally terminate this **Agreement**, declare it null and void, and have no further obligations under this **Agreement**, if any of the following conditions subsequent occurs:

a. The **Parties** fail to obtain and maintain **Preliminary Approval** of the proposed settlement;

b. The **Court** refuses to certify the **Class Action**;

c. The **Court** fails to enter **Final Approval** consistent with the provisions in Section 6.5; or

d. If any appeal is taken, the **Agreement** is not upheld on appeal.

8.4 Time for Compliance. All time periods set forth herein shall be computed in calendar days unless otherwise specified. If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday or **Court** holiday, that act may be performed on

the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

8.5 Governing Law. This Agreement is intended to and shall be governed by the laws of the State of New York, without regard to conflicts of law principles that would require the application of the laws of another jurisdiction.

8.6 Entire Agreement. The terms and conditions set forth in this **Agreement** constitute the complete and exclusive statement of the agreement between the **Parties** hereto relating to the subject matter of this **Agreement**, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement. The **Parties** further intend that this **Agreement** constitutes the complete and exclusive statement of its terms as between the **Parties** hereto, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving this **Agreement**. Any amendment or modification of the **Agreement** must be in writing and signed by each of the **Parties** and the **Parties' Counsel**.

8.7 Advice of Counsel. The determination of the terms of, and the drafting of, this **Agreement** have been by mutual agreement after negotiation, with consideration by and participation of all **Parties** hereto and the **Parties' Counsel**.

8.8 Binding Agreement. This **Agreement** shall be binding upon and inure to the benefit of the respective heirs, successors and assigns of the **Parties** hereto.

8.9 No Waiver. The waiver by any **Party** of any provision or breach of this **Agreement** shall not be deemed a waiver of any other provision or breach of this **Agreement.**

8.10 No Assignment. **Plaintiffs** and **Plaintiffs' Counsel** represent and warrant that none of **Plaintiffs**' claims asserted in the **Actions,** encompassed by the **Released Claims**, or otherwise referred to in this **Agreement** has been assigned, encumbered, or in any manner transferred in whole or in part.

8.11 Execution in Counterparts. This **Agreement** shall become effective upon its execution by all of the undersigned. The **Parties** may execute this Agreement in counterparts and/or by fax or electronic mail, and execution of counterparts shall have the same force and effect

as if all **Parties** had signed the same instrument. The **Parties** and their counsel may execute this agreement by electronic signature.

8.12 Captions. Captions and section numbers herein are inserted merely for the reader's convenience, and in no way define, limit, construe, or otherwise describe the scope or intent of the provisions of this **Agreement**.

8.13 Extensions of Time. The **Parties** reserve the right, by agreement and subject to the **Court**'s approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this **Agreement**.

8.14 Enforcement of this Agreement. The **Court** shall retain jurisdiction to enforce, interpret, and implement this **Agreement**. All **Parties** hereto submit to the jurisdiction of the **Court** for these purposes.

8.15 Severability. In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, this **Agreement** shall continue in full force and effect without said provision.

8.16 No Primary Drafter of Settlement Agreement. The determination of the terms of, and the drafting of, this **Agreement** has been by mutual understanding after negotiation, with consideration by and participation of, the **Parties** hereto and their counsel.

8.17 Variance in Terms. In the event of any variance between the terms of this **Agreement** and any of the Exhibits hereto, the terms of this **Agreement** shall control and supersede the Exhibit(s).

8.18 Authorization to Enter Settlement Agreement. The individual signing this **Agreement** on behalf of **Defendant** represents that he/she is fully authorized by **Defendant** to enter into, and to execute, this **Agreement** on behalf of **Defendant**. **Plaintiffs' Counsel** represent that they are fully authorized to conduct settlement negotiations with **Defendant's Counsel** on behalf of **Plaintiffs**, and to enter into, and to execute, this **Agreement** on behalf of the **Settlement Class Members**, subject to **Court** approval pursuant to Federal Rule of Civil Procedure 23(e). **Plaintiffs** enter into and execute this **Agreement** on behalf of themselves, and as representatives

of and on behalf of the **Settlement Class Members**, subject to **Court** approval pursuant to Federal Rule of Civil Procedure 23(e).

8.19 Stay Pending Court Approval. The **Parties** agree to stay all proceedings, other than those proceedings necessary to carry out or enforce the terms and conditions of this **Agreement**, until the **Effective Date** has occurred. If, despite the Parties' best efforts, this **Settlement** should fail to become effective, the **Parties** will return to their prior positions in the **Action**.

8.20 Notices. All notices to the **Parties** or **Parties' Counsel** required by this **Agreement**, shall be made in writing and communicated by mail and fax or email to the following addresses:

If to **Plaintiffs**, **Plaintiffs' Counsel**, or **Class Counsel**:

Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10024
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

If to **Defendant** or **Defendant's Counsel**:

Creighton R. Magid
**DORSEY & WHITNEY LLP**
1401 New York Avenue NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 442-3000
Email: *magid.chip@dorsey.com*

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by all of the undersigned.

**APPROVED AND AGREED:**

DATED: 04/01/2026

*Malcolm Bethea*

Malcolm Bethea
*Plaintiff and Class Representative*

DATED: 04/01/2026

*Joseph Vazquez*

Joseph Vazquez
*Plaintiff and Class Representative*

DATED: 04/02/2026

*Mariahlee Spahn*

Mariahlee Spahn
*Plaintiff and Class Representative*

DATED: 03/31/2026

*Lisa Sibirtzeff*

*Lisa Sibirtzeff*
*Plaintiff and Class Representative*

DATED: 04/02/2026

**REESE LLP**

*Michael Reese*

Michael R. Reese
*Class Counsel and Plaintiffs' Counsel*

DATED: 04/02/2026

**SHEEHAN & ASSOCIATES, P.C.**

*Spencer Sheehan*

Spencer Sheehan
*Class Counsel and Plaintiffs' Counsel*

DATED: 04/02/2026

**LAW OFFICE OF JAMES CHUNG**

*James Chung*

James Chung
*Class Counsel and Plaintiffs' Counsel*

**APPROVED AND AGREED (CONTINUED):**

DATED: 4/2/26

**SAZERAC COMPANY, INC.**

By: ______________________

Name: Maurice Loebl

Its: Chief Legal Officer

DATED: 4/3/26

**DORSEY & WHITNEY LLP**

______________________

Creighton R. Magid

*Defendant's Counsel*

# LIST OF EXHIBITS

| | |
|---|---|
| Exhibit A: | Products List |
| Exhibit B: | Claim Form |
| Exhibit C: | Long Form Notice |
| Exhibit D: | Online Notice |
| Exhibit E: | Amended Complaint for Settlement |
| Exhibit F: | Proposed Order of Preliminary Approval |

**EXHIBIT A**

## EXHIBIT A

Chi-Chi’s Original Margarita malt beverage in 6.3 and 50.7 ounce sizes

Chi-Chi’s Peach Margarita malt beverage in 6.3 and 50.7 ounce sizes

Chi-Chi’s Pineapple Margarita malt beverage in 6.3 and 50.7 ounce sizes

Chi-Chi’s Pink Lemonade Margarita malt beverage in 6.3 and 50.7 ounce sizes

Chi-Chi’s Ruby Red Margarita malt beverage in 6.3 and 50.7 ounce sizes

Chi-Chi’s Skinny Margarita malt beverage in 6.3 and 50.7 ounce sizes

**EXHIBIT B**

| Your claim must be submitted online or postmarked by: [Claims Deadline] | *Bethea* *et al.* *v. Sazerac Co.*<br>Case No. 1:24-cv-03747-CLP<br>District Court for the Eastern District of New York<br><br>**SETTLEMENT CLAIM FORM** | Your claim must be submitted online or postmarked by: [Claims Deadline] |
|---|---|---|

## GENERAL INSTRUCTIONS

**Who is eligible to file a claim?** WThe court has defined the Class this way: "All persons in the United States who purchased any of the Products from retail locations in New York or Pennsylvania during the Class Period for personal or household use."

Products are defined as margarita malt beverages sold under the Chi-Chi's brand name.

NOTE: the settlement only covers malt-based Chi-Chi's margaritas and does not cover tequila-based Chi-Chi's margaritas.

**Excluded from the Settlement Class** are: (1) the Released Parties; (2) Sazerac and its officers, directors, and related companies; (3) the Judge in this case, and the Judge's family and staff; (4) anyone who validly excludes themselves from the Settlement; and (5) governmental entities.

**COMPLETE THIS CLAIM FORM IF YOU ARE A CLASS MEMBER AND WISH TO RECEIVE ONE OR MORE OF THE FOLLOWING SETTLEMENT BENEFITS**

## AVAILABLE BENEFITS

Sazerac will establish a Settlement Fund of $1,100,000.00. The Settlement Fund will first be used to pay court-approved attorneys' fees and costs, Service Award payments for the Plaintiffs, and the costs of administering the Settlement. The net remaining money will be used to pay for the benefits described below.

### CASH BENEFIT OPTION

**Cash Payment for Valid Claims.** If you made qualifying purchases directly from a retail location in New York or Pennsylvania for household use during the Class Period from March 24, 2021, through [DATE OF PRELIMINARY APPROVAL ORDER], you may claim a one-time cash payment.

This benefit provides cash payments as follows:

- **$4.00** for the first qualifying purchase submitted
- **$1.25** for each additional qualifying purchase submitted for a 6.3 ounce Product
- **$2.50** for each additional qualifying purchase submitted for a 50.7 ounce Product

You need to submit a Claim Form showing your qualifying purchases. You may provide proof, such as receipts or order confirmations, to support your claim, but proof is not required to submit a valid claim. For purchases submitted without proof of purchase, you may seek compensation for up to **9** additional 6.3

Your claim must be submitted online or postmarked by: [Claims Deadline]

ounce Products and **5** additional 50.7 ounce Products. For claims with proof or purchase, you may seek compensation for up to **18** additional 6.3 ounce Products and **9** additional 50.7 Products. You may seek compensation for both 6.3 ounce and 50.7ounce Products you purchased. You also may seek compensation for claims you have based upon proof of purchase and without proof of purchase.

**You cannot submit more than one Claim Form per household.** In this sentence, "household" means everyone living together, either now or during the Class Period (March 24, 2021, through [DATE OF PRELIMINARY APPROVAL ORDER]) in the same dwelling unit.

The Settlement Fund is capped at $1,100,000.00. This means that if the total value of expenses and benefits claimed is over $1,100,000.00, everyone's payments will be reduced pro rata so that the total adds up to $1,100,000.00.

Your claims are cumulative. For example, if you make a valid claim for 3 products without Proof of Purchase, and 4 products with Proof of Purchase, you will receive $7.50 for the first claim, $3.00 for the remaining 2 claims without Proof of Purchase, and $6.00 for the 4 with Proof of Purchase claims, for a total of $16.50.

A full description of how this works is available in Settlement Agreement, at www.[SettlementWebsite].com.

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail: Sazerac Consumer Settlement
  c/o Settlement Administrator
  [PO Box Number]
  Santa Ana, CA 92799-9958

**THE MOST EFFICIENT WAY TO SUBMIT YOUR CLAIMS IS ONLINE AT www.[SettlementWebsite].com**

You may also print out and complete this Claim Form, and submit it by U.S. mail.

An electronic image of the completed Claim Form can also be emailed to info@[SettlementWebsite].com

**You must submit your Claim Form online, by mail, or by email no later than [Claims Deadline].**

| Your claim must be submitted online or postmarked by: [Claims Deadline] |
|---|

***Bethea* et al. v. Sazerac Co.**
Case No. 1:24-cv-03747-CLP
District Court for the Eastern District of New York

**SETTLEMENT CLAIM FORM**

| Your claim must be submitted online or postmarked by: [Claims Deadline] |
|---|

## I. CLASS MEMBER NAME AND CONTACT INFORMATION

Print your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this claim form. All fields are required. **Please print legibly.**

| | |
|---|---|
| | |
| First Name | Last Name |

| |
|---|
| |
| Street Address |

| | | |
|---|---|---|
| | | |
| City | State | Zip Code |
| | | |
| Email Address | Phone Number | Notice ID (if known) |

## II. CLAIMS WITH PROOF OF PURCHASE

If you are making claims <u>with</u> Proofs of Purchase, please list the Proofs of Purchase you are attaching with this claim:

**<u>For 6.3 ounce Products:</u>**

| ***Description of Proofs of Purchase Provided for 6.3 ounce Products*** | ***Number*** | ***Name of State in Which Product was Purchased*** |
|---|---|---|
| *Example: Online order of Chi-Chi's "Original Margarita" malt beverages* | *2* | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **TOTAL NUMBER CLAIMED:** | | |

If you have more purchases than rows, you may attach additional sheets of paper to account for them. Please print your name and sign the bottom of each additional sheet of paper.

| Your claim must be submitted online or postmarked by: [Claims Deadline] | ***Bethea*** ***et al. v. Sazerac Co.***<br>Case No. 1:24-cv-03747-CLP<br>District Court for the Eastern District of New York<br><br>**SETTLEMENT CLAIM FORM** | Your claim must be submitted online or postmarked by: [Claims Deadline] |
|---|---|---|

**For 50.7 ounce Products:**

| ***Description of Proofs of Purchase Provided for 50.7 ounce Products*** | ***Number*** | ***Name of State in Which Product was Purchased*** |
|---|---|---|
| *Example: Online order of Chi-Chi's "Original Margarita" malt beverages* | *2* | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **TOTAL NUMBER CLAIMED:** | | |

If you have more purchases than rows, you may attach additional sheets of paper to account for them. Please print your name and sign the bottom of each additional sheet of paper.

## III. CLAIMS WITHOUT PROOF OF PURCHASE

If you are making claims without Proofs of Purchase, how many qualifying purchases are you claiming?

(Please list the number of purchases per each different state in which you bought the Products)

**For 6.3 ounce Products:**

| ***Number of 6.3 ounce Products per State Purchased*** | ***Name of State in Which Product was Purchased*** |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL NUMBER CLAIMED:** | |

**For 50.7. ounce Products:**

| ***Number of 50.7 Products per State Purchased*** | ***Name of State in Which Product was Purchased*** |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL NUMBER CLAIMED:** | |

________________

## IV. PAYMENT SELECTION

Please select **one** of the following payment options, which will be used if you are claiming a cash payment.

☐ **PayPal**
Email address, if different than you provided in Section 1:______________________________

☐ **Venmo**
Mobile number, if different than you provided in Section 1:______________________________

☐ **Zelle**
Email address or mobile number, if different than you provided in Section 1:______________________________

☐ **Virtual Prepaid Card**
Email address, if different than you provided in Section 1:______________________________

☐ **Physical Check**
Payment will be mailed to the address provided in Section 1.

Your claim must be submitted online or postmarked by: [Claims Deadline]

## V. ATTESTATION & SIGNATURE

I swear and affirm on penalty of perjury that the information provided in this Claim Form is true and correct to the best of my knowledge. I understand that my claim is subject to verification and that I may be asked to provide supplemental information by the Settlement Administrator before my claim is considered complete and valid.

Specifically, I attest that the claimed purchases were (a) made directly at a retail establishment or online; (b) that the purchases were not made for purpose of resale, commercial use, or any purpose other than household use; and (c) for each claimed purchase that is not supported by Proof of Purchase, the number of claimed purchases and state of purchase is correct.

| Signature | Printed Name | Date |
|---|---|---|

# EXHIBIT C

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*Bethea et al. v. Sazerac Co.*
Case No. 1:24-cv-03747-PCG
District Court for the Eastern District of New York

**IF YOU BOUGHT CHI-CHI'S MARGARITA MALT BEVERAGES BETWEEN MARCH 2021 AND [DATE OF PRELIMINARY APPROVAL ORDER], A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS AND ENTITLE YOU TO A CASH PAYMENT.**

*A court has authorized this notice. This is not a solicitation from a lawyer.*
*You are not being sued.*
***Please read this Notice carefully and completely.***

- A Settlement has been reached with Sazerac Co. ("Sazerac" or "Defendant") in a class action lawsuit. This case alleges that it was improper to label certain Chi-Chi's brand margarita malt beverages. You are affected by the case if you bought these Chi-Chi's malt based margarita beverages for household use from a retail location in New York or Pennsylvania, from March 24, 2021, through [DATE OF PRELIMINARY APPROVAL ORDER]. NOTE: The settlement only covers malt-based margarita beverages AND DOES NOT cover tequila-based margarita beverages.

- The lawsuit is called *Bethea et al. v. Sazerac Co.*, Case No. 1:24-cv-03747-PCG. It is pending in the District Court for the Eastern District of New York (the "Litigation").

- Sazerac denies that it did anything wrong, and the Court has not decided who is right.

- The parties have agreed to settle the lawsuit (the "Settlement") to avoid the costs and risks, disruptions, and uncertainties of continuing the Litigation.

- Your rights are affected whether you act or don't act. ***Please read this Notice carefully and completely.***

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive benefits or payments from this Settlement is by submitting a valid and timely Claim Form.<br><br>The fastest way to submit your Claim Form is online at **www.maltbeveragemargaritasettlement com**. If you prefer, you can download the Claim Form from the Settlement Website and mail it to the Settlement Administrator. You may also call or email the Settlement Administrator to receive a paper copy of the Claim Form. | **______, 2026** |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the Settlement and receive no payment. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendants related to the legal claims resolved by this Settlement. You can hire your own lawyer at your own expense. | **______, 2026** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the Settlement, you may object to it by writing to the Court about why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also file a claim for Settlement benefits. | **______, 2026** |
| **DO NOTHING** | Unless you opt out of the Settlement, you are automatically part of the Settlement. If you do nothing, you will not receive payments from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. | No Deadline |

- These rights and options—**and the deadlines to exercise them—**are explained in this Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ........................................ 3
WHO IS IN THE SETTLEMENT ........................................ 4
THE SETTLEMENT BENEFITS ........................................ 4
SUBMITTING A CLAIM FORM FOR SETTLEMENT BENEFITS ........................................ 5
THE LAWYERS REPRESENTING YOU ........................................ 6
EXCLUDING YOURSELF FROM THE SETTLEMENT ........................................ 6
COMMENTING ON OR OBJECTING TO THE SETTLEMENT ........................................ 7
THE COURT'S FINAL APPROVAL HEARING ........................................ 8
IF I DO NOTHING ........................................ 8
GETTING MORE INFORMATION ........................................ 8

# Basic Information

## 1. Why was this Notice issued?

The District Court for the Eastern District of New York, authorized this Notice. You have a right to know about the proposed Settlement of this class action lawsuit, and about all of your options, before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

The lawsuit is called *Bethea et al. v. Sazerac Co.*, Case No. 1:24-cv-03747-PCG. It is pending in the District Court for the Eastern District of New York. The people that filed this lawsuit are called the "Plaintiffs" (or "Class Representatives") and the company they sued, Sazerac Co., is called the "Defendant."

## 2. What is this lawsuit about?

This lawsuit alleges that from March 24, 2021, through [DATE OF PRELIMINARY APPROVAL ORDER], Sazerac's Chi-Chi's brand margarita malt beverages misled consumers to believe that the alcohol in the products was tequila and triple sec, when, in fact, it was a malt based alcohol.

## 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are called the "Plaintiffs" or "Class Representatives." Together, the people included in the class action are called a "Class" or "Class Members." One court resolves the lawsuit for all Class Members, except for those who opt out from the settlement. In this Settlement, the Class Representatives are Malcolm Bethea; Joseph Vazquez; Mariahlee Spahn; and Lisa Sibirtzeff. Everyone included in this Action are the Class Members.

## 4. Why is there a Settlement?

The Court did not decide whether the Plaintiffs or the Defendant are right. Both sides have agreed to a Settlement to avoid the costs and risks of a trial, and to allow the Class Members to receive benefits from the Settlement. The Plaintiffs and their attorneys think the Settlement is best for all Class Members.

# Who is in the Settlement?

## 5. Who is included in the Settlement?

The court has defined the Class this way: "All persons in the United States who purchased any of the Products at retail locations in New York and/or Pennsylvania during the Class Period for personal or household use."

Products are defined as Chi-Chi's Margarita malt based beverages. **Tequila based Chi-Chi's margaritas are not part of the settlement.**

Class Period is defined as March 24, 2021 through ENTER DATE OF PRELIMINARY APPROVAL HERE

## 6. Are there exceptions to being included?

Yes. Excluded from the Class are: (1) the Released Parties; (2) Sazerac and its officers, directors, and related companies; (3) the Judge in this case, and the Judge's family and staff; (4) anyone who validly excludes themselves from the Settlement; and (5) governmental entities.

If you are not sure whether you are a Class Member, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail: Sazerac Consumer Settlement<br>c/o Settlement Administrator<br>[PO Box Number]<br>Santa Ana, CA 92799-9958

You may also view the Settlement Agreement at www.maltbeveragemargaritasettlement com.

# The Settlement Benefits

## 7. What does the Settlement provide?

Sazerac will establish a Settlement Fund of $1,100,000.00. The Settlement Fund will first be used to pay court-approved attorneys' fees and costs, Service Award payments for the Plaintiffs, and the costs of administering the Settlement. The net remaining money will be used to pay for the benefits described below.

**CASH BENEFIT OPTION**

**Cash Payment for Valid Claims.** If you made qualifying purchases directly from a retail location in New York or Pennsylvania for household use during the Class Period from March 24, 2021, through [DATE OF PRELIMINARY APPROVAL ORDER], you may claim a one-time cash payment.

This benefit provides cash payments as follows:

- **$4.00** for the first qualifying purchase submitted
- **$1.25** for each additional qualifying purchase submitted for a 6.3 ounce Product
- **$2.50** for each additional qualify purchase submitted for a 50.7 ounce Product

You need to submit a Claim Form showing your qualifying purchases. You may provide proof, such as receipts or order confirmations, to support your claim, but proof is not required to submit a valid claim.

For purchases submitted without proof of purchase, you may submit up to **9** additional claims for a 6.3 ounce Product **5** additional claims for a 50.7 ounce Product. For claims without proof of purchase you may submit up to **18** additional claims for a 6.3 ounce Product **9** additional claims for a 50.7 ounce Product.

**You cannot submit more than one Claim Form per household.** In this sentence, "household" means everyone living together, either now or during the Class Period (March 24, 2021, through [DATE OF PRELIMINARY APPROVAL ORDER]) in the same dwelling unit.

Your claims are cumulative. For example, if you make a valid claim for four 6.3 ounce Products and one 50.7 ounce Product without Proof of Purchase and five 6.3 ounce Products and eight 50.7 ounce Products with Proof of Purchase shall receive $4.00 for the first Product, $3.75 for the additional three 6.3 ounce Products without Proof of Purchase, $2.50 for the additional one 50.7 ounce Products without Proof of Purchase and $6.25 for the five 6.3 ounce Products with Proof of Purchase and $20.00 for the eight 50.7 ounce Products with Proof of Purchase, for a total of $36.50. A full description of how this works is available in Settlement Agreement, at www.[SettlementWebsite].com.

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail: Sazerac Consumer Settlement
  c/o Settlement Administrator
  [PO Box Number]
  Santa Ana, CA 92799-9958

## 8. What claims am I releasing if I stay in the Class?

If you stay in the class, you won't be able to be part of any other lawsuit against Sazerac about the issues that this Settlement covers. The "Releases" section of the Settlement Agreement (Section VII) describes the legal claims that you give up if you remain in the Class. The Settlement Agreement is available at www.maltbeveragemargaritasettlement.com

# Submitting a Claim Form for a Settlement Payment

## 9. How do I submit a claim for a Settlement benefit?

The fastest way to submit your Claim Form is online at **www.maltbeveragemargaritasettlement.com.** If you prefer, you can download a printable Claim Form from the website and mail it to the Settlement Administrator at:

Sazerac Consumer Settlement
c/o Settlement Administrator
[PO Box Number]
Santa Ana, CA 92799-995

You may also contact the Settlement Administrator to request a Claim Form by telephone, toll free, 1-XXX-XXX-XXXX, by email info@[SettlementWebsite].com, or by U.S. mail at the address above.

### 10. Are there any important Settlement payment deadlines?

If you are submitting a Claim Form online, you must do so by [Claims Deadline]. If you are submitting a claim by U.S. mail, the completed and signed Claim Form must be postmarked no later than [Claims Deadline].

### 11. When will the Settlement benefits be issued?

The Court will hold a final approval hearing on [FA Hearing Date] (***see* Question 18)**. If the Court approves the Settlement, there may be appeals. We do not know if appeals will be filed, or how long it will take to resolve them if they are filed.

Settlement payments will be distributed if the Court grants final approval, and after any appeals are resolved.

## The Lawyers Representing You

### 12. Do I have a lawyer in the case?

Yes, the Court has appointed law firms Sheehan & Associates, P.C.; Reese LLP; and the Law Office of James Chung, to represent you and other Class Members ("Class Counsel").

### 13. Should I get my own lawyer?

You will not be charged for Class Counsel's services. If you want your own lawyer, you may hire one at your expense.

### 14. How will Class Counsel be paid?

Class Counsel will ask the court to approve $366,666.66 as reasonable attorneys' fees, plus separate reimbursement of litigation costs and expenses. This amount will be paid from the Settlement Fund.

Class Counsel will also ask for Service Award payments of $5,000.00 for each of the Class Representatives. Service Award payments will also be paid from the Settlement Fund.

## Excluding Yourself from the Settlement

### 15. How do I opt out of the Settlement?

If you do not want to be part of the Settlement, you must formally exclude yourself from the Settlement. This is called a Request for Exclusion, and is sometimes also called "opting out." If you opt out, you will not receive Settlement benefits or payment. However, you will keep any rights you may have to sue Sazerac on your own about the legal issues in this case.

If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement. You will not be eligible to receive any Settlement benefits if you exclude yourself.

The deadline to exclude yourself from the Settlement is **[Opt-Out Deadline]**.

You may only exclude yourself—not any other person.

You can submit your exclusion form one of three ways:

1. Submitting your exclusion form on the settlement website;
2. Downloading and mailing a completed exclusion form to the Claims Administrator at the address immediately below; or
3. Provide the following information and mailing to the Claims Administrator at the address below the following:

    a. the name of the Litigation: *Bethea et al. v. Sazerac Co.*, Case No. 1:24-cv-03747-PCG, pending in the District Court for the Eastern District of New York;

    b. your full name, mailing address, telephone number, and email address;

    c. personal signature; and

    d. the words "Request for Exclusion" or a clear and similar statement that you do not want to participate in the Settlement.

If mailing your Request for Exclusion to the Settlement Administrator, send to the following at:

Sazerac Consumer Settlement
ATTN: Exclusion Request
[PO Box Number]
Santa Ana, CA 92799-9958

Or Submit through the Settlement Website at **www.maltbeveragemargaritasettlement com**

Your Request for Exclusion must be submitted (if submitted through the settlement website) or postmarked by **[Opt-Out Deadline]**.

# Commenting on or Objecting to the Settlement

## 16. How do I tell the Court if I like or do not like the Settlement?

If you are a Class Member and do not like part or all of the Settlement, you can object to it. Objecting means telling the Court your reasons for why you think the Court should not approve the Settlement. The Court will consider your views.

You cannot object if you have excluded yourself from the Settlement (***see* Question 15**)

You must provide the following information for the Court to consider your objection:

(1) the name of the Litigation: *Bethea et al. v. Sazerac Co.*, Case No. 1:24-cv-03747-G, pending in the District Court for the Eastern District of New York;

(2) your full name, mailing address, telephone number, and email address;

(3) a clear description of all the reasons you object; include any legal support, such as documents, you may have for your objection;

(4) if you have hired your own lawyer to represent you for this objection, provide their name, bar number, and contact information; and

(6) your signature (or, if you have hired your own lawyer, your lawyer's signature).

For your objection to be valid, it must meet each of these requirements.

To be considered by the Court, you must send a copy of the objection to the Settlement Administrator to the address below. To be valid the objection must be postmarked by the Objection Deadline.

| **Settlement Administrator** |
| --- |
| Sazerac Consumer Settlement<br>ATTN: Objections<br>[PO Box Number]<br>Santa Ana, CA 92799-9958 |

## 17. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is opting out and stating to the Court that you do not want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because the Settlement no longer affects you.

# The Court's Final Approval Hearing

## 18. When is the Court's Final Approval Hearing?

The Court will hold a final approval on **[FA Hearing Date] at [Hearing Time] Eastern Time**, in Room [Court Room] of the District Court for the Eastern District of New York, at [Court Address].

At the final approval hearing, the Court will decide whether to approve the Settlement. The court will also decide how Class Counsel should be paid, and whether to award Service Award payments to the Class Representatives. The Court will also consider any objections to the Settlement.

If you are a Class Member, you or your lawyer may ask permission to speak at the hearing at your own cost (***See*** **Question 16**).

The date and time of this hearing may change without further notice. Please check www.maltbeveragemargaritasettlement.com for updates.

## 19. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish, but you do not have to.

If you file an objection, you do not have to come to the Final Approval Hearing to talk about it; the Court will consider it as long as it was filed on time. You may also pay your own lawyer to attend, but you do not have to.

# If I Do Nothing

## 20. What happens if I do nothing at all?

If you do nothing, you will not receive a benefit from this Settlement.

You will also give up the rights described in **Question 8**.

# Getting More Information

## 21. How do I get more information?

This Notice is a summary of the proposed Settlement. The full Settlement Agreement and other related documents are available at the Settlement Website, **www.maltbeveragemargaritasettlement.com.**

If you have additional questions, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail: Sazerac Consumer Settlement
  c/o Settlement Administrator
  [PO Box Number]
  Santa Ana, CA 92799-9958

You can obtain copies of publicly filed documents by visiting the office of the Clerk of the Court located at:

United States District Court for the
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**DO NOT CONTACT THE COURT OR CLERK OF COURT REGARDING THIS SETTLEMENT**

# EXHIBIT D

# Online Notice Ad Mockups

simpluris

Created for *Bethea v. Sazerac Company, Inc.*

Meta (Facebook and Instagram) Ads




Facebook Feed Ad




Instagram Feed Ad

**Note: Meta ads are assembled by the platform from approved images and text. The images above are representative of the wide variety of ads that will run on Facebook and Instagram.**

# Online Notice Ad Mockups

Created for *Bethea v. Sazerac Company, Inc.*

simpluris

## Animated GIF Website Banner Ads




728x90 px




300x250 px

## Static Website Banner Ads




160x600 px




300x600 px

## Google Search Ad

Ad • www.MaltBeverageMargaritaSettlement.com

Chi-Chi's Margarita Cocktails | Class Action Settlement | Court Authorized Notice

Did you buy malt-based Chi-Chi's Margarita cocktails any time since March 24, 2021? You may be entitled to a payment from a class action settlement.

**Note: Google Search has strict per-segment character limits.**

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN COURTHOUSE**

| | |
|---|---|
| MALCOLM BETHEA, JOSEPH VAZQUEZ, MARIAHLEE SPAHN and LISA SIBIRTZEFF, individually and on behalf of all others similarly situated,<br>Plaintiffs, | 1:24-cv-03747 |
| - against - | Amended Class Action Complaint |
| SAZERAC COMPANY INC.,<br>Defendant. | Jury Trial Demanded |

Malcolm Bethea ("Plaintiff Bethea"), Joseph Vazquez ("Plaintiff Vazquez"), Mariahlee Spahn ("Plaintiff Spahn"), and Lisa Sibirtzeff ("Plaintiff Sibirtzeff"), collectively "Plaintiffs," through Counsel, allege upon information and belief, except for allegations about Plaintiffs, which are based on personal knowledge:

1. The International Bartenders Association ("IBA"), Merriam-Webster's Diction, and Wikipedia, among other sources, define a margarita as "a cocktail consisting of tequila, orange liqueur, and lime juice[]."



2. A margarita can be enjoyed in a glass, or frozen, blended with ice.





3. According to a study in connection with World Cocktail Day, the margarita is “the most popular cocktail in the world.”[1]

4. This popularity owes to numerous reasons.

5. First, the margarita’s “refreshing taste” “offer[s] the perfect balance of sweet, sour, and salty flavours.”[2]

6. This is due to the customary margarita ingredients, starting with tequila, “the base spirit and star of th[is] cocktail.”

---

[1] Julie Sheppard, World Cocktail Day: Margarita Tops List of the World’s Favourite Cocktails, Decanter, May 13, 2021.

[2] 5 Reasons Why We LOVE A Margarita Cocktail!
by Hannah Craggs | Feb 14, 2023

7. The source of tequila is the blue agave plant, a succulent with large leaves and pointy tips, native to regions of the Americas.[3]

 

8. Standards for tequila production were established by the Norma Oficial Mexicana ("NOM"), and adopted by the United States, requiring that it contain not less than 51% blue agave sugars, prior to fermentation.[4]

9. These "specification[s] ensure[] a consistent flavor profile…[because] [t]he sugars extracted from the heart (piña) of the blue agave," along with "the aging process," "gives tequila its distinct taste and characteristics."[5]

10. According to flavor scientists, "Tequila has the most diverse flavor

---

[3] A succulent plant is one that retains water in its leaves in dry climates.
[4] NOM-006-SCFI-2005, Alcoholic Beverages – Tequila – Specifications; 27 C.F.R. § 5.148(b)(1).
[5] Suavecito Tequila, Authentic Mexican Tequila: Discovering the Differences That Matter, Sept. 7, 2023; Olmeca Altos, Aging Tequila; Cupcakes and Cutlery, Best Tequila for Margaritas.

profile of compound classes, but contributes to the [margarita] flavor mostly with esters and alcohols."

11. The "tequila brings a unique warmth and distinctive agave flavor" to a margarita.

12. Beyond the tequila, the "Lime juice and orange peel oil (which is part of the orange liqueur) contribute mostly with terpenes," providing its "tangy citrus flavor."

13. A margarita aficionado asked rhetorically, "Who can deny the bright, tenacious flavor of tequila with freshly squeezed lime juice, a hit of orange liqueur for sweetness, and a salt rim to balance the flavors?"[6]

14. Though "A margarita bears a resemblance to a daiquiri in its balance of sweet and sour, [] it's the unique tequila flavor," described as "earthy-yet-sweet," "that distinguishes it."[7]

15. Second, the increased popularity of margaritas is a result of the significant increase in consumer demand for spirits based on agave, such as tequila and mezcal, which have surpassed whiskey and vodka.[8]

---

[6] https://savoringtoday.com/classic-margarita/

[7] Jordan Schulkin and Pat Phair, Differences Between Tequila Types, , Ohio Liquor ("OHLQ"), May 3, 2024.

[8] Jessica Mason, US Consumers to Spend More on Mezcal and Tequila than Whiskey, The Drinks Business, June 20, 2022.

16. Reasons include (1) their heritage as some of the oldest distilled spirits, (2) mixability and ease of use in cocktails, (3) agave's reputation as a crop untouched by modern agriculture, as opposed to traditional grains, and (4) numerous celebrity-owned premium tequila brands, providing additional exposure to the public.

17. Third, many have touted the margarita's "healthy" qualities, compared to other alcoholic drinks.[9]

18. New York's own Verde Kitchen points out that "Margaritas are fairly low in sugar contrasted with other cocktails [which] means you can enjoy them without suffering through a ton of empty calories."

19. It also observed that "The agavins in tequila, the main liquor in margaritas, have been shown to reduce bad cholesterol (low-density lipoproteins or LDLs) [such that] moderate tequila consumption can help reduce the risk of heart disease and stroke."

20. Finally, "Unlike other alcoholic beverages, like beer, which include heavy amounts of gluten, margaritas are a gluten-free drink."

21. No institution was more associated with margaritas than Chi-Chi's, which once had over two hundred locations across the country.

[9] Margaritas are Healthy, Verde Kitchen.







22. Owing to its true Mexican roots, Chi-Chi's is believed to be responsible for popularizing "Mexico's favorite drink" across the United States, introducing generations of Americans to the irresistible mix of tequila, triple sec, and lime juice.







23. Though Chi-Chi's is no longer around, its legacy continues through its margaritas sold to consumers under its eponymous brand.

24. For those seeking to recapture the Chi-Chi's excitement, Sazerac Company Inc. ("Defendant") introduced large bottles of Chi-Chi's "Original Margarita," in gold and green labeling, corresponding to the key margarita

ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime, described as "Made With Tequila & Triple Sec."







25. In response to consumer demand for all-things-margarita and the value of the Chi-Chi's brand, this was followed by the introduction of miniature versions of the Original Margarita, for those seeking a margarita "on the go."






26. However, miniature bottles of Chi-Chi's Original Margarita were only one among many consumer choices, making it difficult to stand out for impulse buyers.



27. To boost sales, Defendant decided to not just compete against other mini bottles of mixed drinks based on distilled spirits, by developing and marketing a "pseudo cocktail" version of Chi-Chi's Original Margarita.

28. This version was manufactured and designed to look and taste like its higher valued counterpart, but based not on distilled spirits, but a malt alcohol base, so it could be sold in more locations.

29. Only the most eagle-eyed observers noticed what some have described as this "awful trick," noting what appears to be intentional similarities between the tequila-based margarita (left) and the "malt version" without tequila (right).







30. To protect consumers from having to "fly-speck" the alcoholic beverages they buy, the Federal Alcohol Administration Act ("FAAA") prohibits sellers from passing off lower quality malt beverages as distilled spirits, "irrespective of falsity," with respect to, *inter alia*, "the[ir] identity and quality." 27 U.S.C. § 201 *et seq*., e.g., 27 U.S.C. § 205(e) ("Labeling"); Title 27, Code of Federal Regulations ("C.F.R."), Parts 1 to 39, Tax and Trade Bureau ("TTB").

31. The labelling of the Chi-Chi's Original Margarita Malt is misleading for multiple reasons.

32. First, while the malt version is required to have a "brand name," "Chi-Chi's Original Margarita" "is misleading [because] it creates [] by itself…[] erroneous impression[s] or inference as to [its] [] identity, or other characteristics." 27 C.F.R. § 7.63(a)(1); 27 C.F.R. § 7.64(b).

33. This is because Chi-Chi's Original Margarita is associated with, and understood by consumers, as referring to the tequila and triple sec-based version.

34. Second, the "Chi-Chi's Original Margarita" brand name "is misleading [because] it creates…an[] erroneous impression[] or inference as to [its] [] identity, or other characteristics," *viz.*, that it contains the distilled spirit of tequila and orange liqueur, like its counterpart. 27 C.F.R. § 7.63(a)(1); 27 C.F.R. § 7.64(b).

35. The packaging and labeling of the Margarita Malt (right) features identical colors, theme, fonts, graphics, and other matter, such as the Chi-Chi's logo, cap in identical color, with identical grooves, and name of "Original Margarita," as the distilled spirit version (left).






36. Third, "Chi-Chi's Original Margarita" is not "qualified with the word 'brand' or with some other qualification [which could] dispel[] any misleading impression that might otherwise [be] created," that it contains tequila and triple sec, like its counterpart, when it does not. 27 C.F.R. § 7.63(a)(1); 27 C.F.R. § 7.64(b).

37. Fourth, though the Product's "statement of composition," "Malt Beverage With Natural Flavors and FD&C Yellow 5," "[only] meet[s]

the…Minimum type size," it is not "readily legible to potential consumers under ordinary conditions." 27 C.F.R. § 7.52(a); 27 C.F.R. § 7.53(a)(2); 27 C.F.R. § 7.63(a)(2); 27 C.F.R. § 7.141(b)(2).




38. This information, in the smallest allowed size, is at the bottom of the bottle, unlikely to be seen by purchasers who have had their attention captured by Chi-Chi's "Original Margarita," in gold and green labeling, corresponding to the key margarita ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime.

39. Moreover, those who have bought the tequila version or are aware of it, or know anything of Chi-Chi's, will not know to glance downwards and strain their eyes, because they have no reason to expect what they are buying is anything other than Chi-Chi's "Original Margarita," containing tequila and triple sec.

40. Only if a purchaser has the Chi-Chi's Margarita Tequila version next to the Chi-Chi's Margarita Malt version could they notice that the former is based on distilled spirits while the latter is based on malt alcohol.

41. As the two are intentionally sold from different locations, such a comparison would be impossible at the point-of-sale.

42. Fifth, retailers selling the Chi-Chi's Margarita Malt display it next to other "pseudo-spirits," like Fireball and Southern Comfort, all in miniature bottles.

43. As these pseudo-spirits are often promoted as "shots," their promotion next to the Margarita Malt furthers the misleading impression the Chi-Chi's Margarita Malt contains tequila and triple sec, even though it is a malt beverage.

44. As a result of the false and misleading representations, comparisons, and omissions identified here, the Product is sold at a premium price, at an average high of $2.16 for the 6.3 ounce size (which equates to .34 per ounce) and $9.50 for the 50.7 ounce size (which equates to .19 per ounce). This is higher than similar products, represented in a non-misleading way, and/or higher than it would be sold for absent the misleading representations, comparisons, and/or omissions.

Specifically, Ritas Sparkling Margarita which clearly states it is a malt beverage sells for $3.59 for a 25 ounce product (which equates to .14 per ounce). Accordingly, Chi-Chi's 6.3 ounce product sells for $0.20 per ounce more than Ritas (for a $1.26 price premium for the 6.3 ounce Product) and the 50.7 ounce Product sells for $0.05 per ounce more than Ritas (for a $2.50 price premium for the 50.7 ounce Product).

## JURISDICTION

45. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

46. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

47. Plaintiff Bethea is a citizen of New York.

48. Defendant is a citizen of New Orleans and Kentucky, with it principals offices in Louisville, Kentucky.

49. The class of persons Plaintiffs seek to represent includes persons who are citizens of a different state from which Defendant is a citizen.

50. The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York.

51. Defendant has committed tortious acts within this State through the distribution and sale of the Product.

## VENUE

52. Plaintiff Bethea resides in Queens County.

53. Venue is in this Court because a substantial or entire part of the events or omissions giving rise to Plaintiff Bethea's claims occurred in Queens County.

54. Venue is in this Court because Plaintiff Bethea's residence is in Queens County.

55. Plaintiff Bethea purchased, used, consumed, and/or applied the Product in reliance on the packaging, labeling, representations, comparisons, and omissions, identified here, in Queens County, and/or other areas.

56. Plaintiff Bethea first became aware the packaging, labeling, representations, comparisons, and omissions, were false and misleading, in Queens County.

## PARTIES

57. Plaintiff Bethea is a citizen of Queens County, New York.

58. Plaintiff Vazquez is a citizen of Queens County, New York.

59. Plaintiff Spahn is a citizen of Suffolk County, New York.

60. Plaintiff Sibirtzeff is a citizen of Pike County, Pennsylvania.

61. Defendant Sazerac Company Inc. is a New Orleans corporation with a principal place of business in Kentucky.

62. Defendant is one of the world's largest sellers of distilled spirits.

63. Defendant manufactures, markets, and sells Chi-Chi's Original Margarita, in versions based on tequila and triple sec, and based on malt alcohol.

64. Plaintiffs are like most consumers of alcoholic beverages, who prefer those based on distilled spirits to those based on brewing and fermentation, or malt alcohol, due to reasons including superior quality, health, and/or taste.

65. Plaintiffs are like all Americans who know a margarita is based on the distilled spirit of tequila and triple sec.

66. Plaintiffs are like all Americans, who even if they have never been to Chi-Chi's or even heard of it, they will recognize it is a Mexican-sounding name.

67. Plaintiffs are like all Americans who associate a margarita with Mexico.

68. Plaintiffs and consumers understood "Chi-Chi's Original Margarita," in gold and green labeling, corresponding to the key margarita ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime, consistent with common usage and dictionary definitions of a margarita, expecting it to have tequila and triple sec and/or awareness of the sale of Chi-Chi's Original Margarita containing tequila and triple sec.

69. Plaintiffs read and relied on the front label, Chi-Chi's "Original Margarita," in gold and green labeling, corresponding to the key margarita ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above

a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime.

70. Plaintiffs relied on the failure to conspicuously identify the Product as a malt beverage, which lacked tequila and triple sec, especially in comparison to the sale of the distilled spirits version, which lacked tequila and triple sec.

71. Plaintiffs were not aware that Defendant marketed a malt version of Chi-Chi's Original Margarita, which lacked tequila and triple sec.

72. Plaintiffs figured there would be no purpose to sell anything other than a cocktail based on distilled spirits in a small bottle, because these are widely available.

73. Plaintiffs did not expect the bottles of Chi-Chi's Original Margarita they bought would not have tequila and triple sec, but would be based on malt alcohol.

74. Plaintiffs observed, knew, and/or were aware of Chi-Chi's Original Margarita, which contained tequila and triple sec.

75. Plaintiffs were unable to compare the Chi-Chi's Original Margarita based on tequila and triple sec to the Chi-Chi's Original Margarita based on malt alcohol, when they bought malt alcohol version.

76. Plaintiffs expected the Product to be the Chi-Chi's Original Margarita and/or contain the distilled spirit of tequila and triple sec, in more than a negligible amount, and did not expect to buy a malt beverage.

77. Plaintiffs did not notice the statement of composition, in small print, which identified the Product as a malt beverage, because of the more prominent statements of Chi-Chi's Original Margarita, in gold and green labeling, corresponding to the key margarita ingredients of tequila and lime, with pictures of an agave plant and fresh limes, above a cocktail glass filled above the brim with a frozen margarita, rimmed with salt and a wedge of lime.

78. Plaintiffs observed the Product next to other miniature bottles of what appeared to be distilled spirit products such as Fireball, Parrot Bay Rum, and/or Southern Comfort.

79. Plaintiffs expected more than a "margarita" taste, but the distilled spirit of tequila and orange liqueur.

80. Plaintiff Bethea purchased the Product between April 2021 and April 2024 at retail stores in New York.

81. Plaintiff Vazquez purchased the Product between April 2021 and April 2024, at retail stores in New York.

82. Plaintiff Spahn purchased the Product between April 2021 and April 2024, at retail stores in New York.

83. Plaintiff Sibirtzeff purchased the Product between January 2023 and January 2026 at retail stores in Pennsylvania.

84. Plaintiffs bought the Product at or around the above-referenced price.

85. Plaintiffs paid more for the Product than they would have had they known it was not a margarita, because it lacked tequila or triple sec, since it was a malt beverage, as they would not have bought it or would have paid less.

86. The Product was worth less than what Plaintiffs paid, and they would not have paid as much, absent Defendant's false and misleading statements, omissions and/or comparisons.

87. Plaintiffs chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components, relative to themselves and other similar versions or products.

## CLASS ALLEGATIONS

88. Plaintiffs seek to represent the following class:

> All persons in the United States who purchased any of the Products at retail locations in New York and/or Pennsylvania at any point from March 24, 2021 to present.

89. Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, members, and attorneys, and immediate family members of any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

90. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiffs and

class members are entitled to damages.

91. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

92. Plaintiffs are adequate representatives because their interests do not conflict with other members.

93. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

94. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

95. The class is sufficiently numerous, with over 100 members, because the Product has been sold throughout the State for several years with the representations, omissions, packaging, and labeling identified here, at grocery stores, big box stores, drug stores, warehouse club stores, independent retail stores, beverage stores, gas stations, gas station convenience stores, convenience stores, bodegas, and/or other similar locations, in this State and/or online, to citizens of this State.

96. Plaintiffs' Counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequate and fairly.

## CAUSES OF ACTION

## COUNT I

Violation of New York General Business Law ("GBL") §§ 349 and 350

97. Plaintiffs incorporate by reference the above paragraphs.

98. The purpose of the GBL is to protect consumers against unfair and deceptive practices. This includes making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

99. The GBL considers false advertising, unfair acts, and deceptive practices in the conduct of any trade or commerce to be unlawful.

100. Violations of the GBL can be based on other laws and standards related to consumer deception.

101. Violations of the GBL can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. 15 U.S.C. § 45 *et seq*.

102. A GBL violation can occur whenever any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq*., are violated.

103. A GBL violation can occur whenever the standards of unfairness and deception set forth and interpreted by the FTC or the federal courts relating to the FTC Act are violated.

104. Violations of the GBL can be based on public policy, established by norms, customs, statutes, law, or regulations.

105. A GBL violation can occur whenever any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices is violated.

106. In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations," including likeness to other similar products. 15 U.S.C. § 55(a)(1).

107. In considering whether the label and/or packaging of alcoholic beverages is misleading, it is required to consider not only representations made or suggested by statements, images, and/or design, but also the extent to which this fails to prominently and conspicuously reveal facts relative to (1) the proportions or absence of certain ingredients, features, and/or attributes, (2) other facts concerning its attributes and characteristics, such as ingredients, quantity, size, amount, origin, type, and/or quality, and/or (3) likeness or similarity to other similar products, which are of material interest to consumers.

108. Defendant's false, misleading, and deceptive representations and omissions with respect to the Product's ingredients are material to consumers.

109. This is because consumers prefer to buy alcoholic beverages based on distilled spirits instead of malt alcohol, for reasons related to health, taste, and/or quality.

110. The Product could have included margarita ingredients like tequila and triple sec, or conspicuously informed consumers that what they were buying included different alcohol.

111. The labeling of the Product violated the FTC Act and thereby violated the GBL, because the representations were likely to deceive a reasonable consumer. The labeling of the Product violates laws, statutes, rules and regulations which proscribe unfair, deceptive, immoral, and/or unconscionable acts or practices, intended to protect the public, thereby violating the GBL.

112. As a result of Defendant's misrepresentations and omissions, Plaintiffs were injured and suffered economic and financial damages by payment of a price premium for the Product, which is the difference between what they paid based on its labeling, and how much it would have been sold for without the misleading labeling identified here.

113. Plaintiffs seek to recover for economic injury, financial damages, and/or economic loss they sustained, based on the misleading labeling, packaging, and/or comparisons of the Product, a deceptive practice under the GBL.

**COUNT II**

Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL") - Misleading and Deceptive Advertisements, 73 P.S. § 201–1, *et seq.*

114. Plaintiff Sibirtzeff repeats and realleges the other allegations in this Complaint as if fully set forth herein.

115. Plaintiff Sibirtzeff brings this claim against Defendant under the Pennsylvania CPL, 73 P.S. § 201–1, *et seq.*, individually and on behalf of the Pennsylvania Class.

116. The CPL declares unlawful "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," 73 P.S. § 201–3(a) including "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4)(xxi).

117. The Product offered to Plaintiff Sibirtzeff and each member of the Class constitutes "trade or commerce" as defined by 73 P.S. § 201–2(3).

118. Plaintiff Sibirtzeff and Class Members are therefore entitled to the protections and remedies provided for by the CPL.

119. Defendant promulgated false and deceptive promises and misrepresentations on its Product.

120. Defendant's conduct also violated Pennsylvania law because it affirmatively and falsely represented the Product's attributes.

121. Defendant's representations created a likelihood of confusion and misunderstanding among consumers.

122. These misrepresentations were material because they were likely to deceive reasonable consumers. These misrepresentations were substantially uniform in content, presentation, and impact upon Plaintiff Sibirtzeff and Class Members.

123. Defendant intended that Plaintiff Sibirtzeff and Class Members be misled by these misrepresentations and omissions.

124. Defendant induced Plaintiff Sibirtzeff and Class Members to rely on its misrepresentations and omissions to their detriment.

125. As a result of Defendant's misconduct, Plaintiff Sibirtzeff and Class Members suffered ascertainable losses.

126. In light of the foregoing, Defendant violated the CPL.

127. Plaintiff Sibirtzeff and Class Members bring this action pursuant to 73 P.S. § 201–9.2 and, in accordance therewith, are entitled to compensatory damages, statutory treble damages in an amount to be determined at the time of trial, attorney fees, and court costs.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying Plaintiffs as representatives and the undersigned as Counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiffs' attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: April 3, 2026

Respectfully submitted,


**SHEEHAN & ASSOCIATES P.C.**

*/s/ Spencer Sheehan*
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck, New York 11021
Tel (516) 268-7080
Fax (516) 234-7800
*spencer@spencersheehan.com*

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

**REESE LLP**
Charles D. Moore
121 N. Washington Ave., 4th Floor
Minneapolis, Minnesota 55401
Tel: (701) 390-7214
*cmoore@reesellp.com*

**LAW OFFICE OF JAMES CHUNG**
James Chung
43-22 216th St
Bayside, New York 11361
Tel: (718) 461-8808
*jchung_77@msn.com*


*COUNSEL FOR PLAINTIFFS AND THE CLASS*

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MALCOLM BETHEA, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>SAZERAC COMPANY, INC.,<br><br>Defendant. | Case No.: 1:24-cv-03747 |

**[PROPOSED] ORDER CERTIFYING SETTLEMENT CLASS, GRANTING PRELIMINARY APPROVAL OF SETTLEMENT, GRANTING APPROVAL OF PLAN OF NOTICE, GRANTING LEAVE TO FILE AMENDED COMPLAINT, AND SCHEDULING OF FINAL APPROVAL HEARING**

Upon consideration of the Unopposed Motion of Plaintiffs Malcolm Bethea ("Bethea"), Joseph Vazquez ("Vazquez"), Mariahlee Spahn ("Spahn") and Lisa Sibirtzeff ("Sibirtzeff")(collectively, "Plaintiffs") for Preliminary Certification of the Settlement Class, Preliminary Approval of the Class Action Settlement, and Approval of the Notice Plan ("Unopposed Motion"), and the entire record herein, the Court certifies the Settlement Class and grants preliminary approval of the Settlement contained in the Parties' Settlement Agreement, upon the terms and conditions set forth in this Order. Unless defined herein, capitalized terms and phrases in this Order shall have the same meaning ascribed to them in the Settlement Agreement. The Court makes the following findings:

**FINDINGS OF FACT**

1. Plaintiffs bring their Unopposed Motion before the Court with the consent of Defendant Sazerac Company, Inc.

2. Plaintiffs Bethea, Vazquez and Spahn filed a Complaint against Defendant on May 24, 2024 (the "Action") in the United States District Court for the Eastern District of New York alleging that Defendant's labeling of Chi-Chi Margarita malt beverages ("the Products")[1] gave consumers the impression that the alcohol in the Products was tequila and triple sec, when in fact it was not, but rather malt.

3. Plaintiff Sibirtzeff is a named plaintiff in the proposed Amended Complaint attached as Exhibit E to the Settlement Agreement.

4. The Parties conducted an extensive and thorough examination, investigation, and evaluation of the relevant law, facts, and allegations to assess the merits of the potential claims to determine the strength of both defenses and liability sought in the Action.

5. The Parties engaged in discovery during settlement negotiations, where Defendant provided Plaintiffs with extensive information.

6. In addition, Class Counsel evaluated the various state consumer protection laws, as well as the legal landscape, to determine the strength of the claims, the likelihood of success, and the parameters within which courts have assessed settlements similar to the proposed Settlement.

7. The Parties entered into a Settlement Agreement pursuant to which they agreed to settle the Action, subject to the approval and determination by the Court as to the fairness, reasonableness, and adequacy of the Settlement, which, if approved, will result in dismissal of the Action with prejudice.

8. The Court has reviewed the Settlement Agreement, including the exhibits attached thereto and all prior proceedings herein, and having found good cause based on the record,

---

[1] Unless otherwise noted, capitalized terms herein have the same meaning as defined in the Settlement Agreement.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED as follows:

1. **Stay of the Action.** All non-settlement-related proceedings in the Action are hereby stayed and suspended until further order of the Court.

2. **Granting Leave to File the Amended Complaint.** The Court GRANTS Plaintiffs leave to file the proposed Amended Complaint for settlement purposes attached as Exhibit E to the Settlement Agreement. No answer is required for the duration of the stay of the Action.

3. **Preliminary Class Certification for Settlement Purposes Only.** Having made the findings set forth above, the Court hereby preliminarily certifies a plaintiff class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), in accordance with the terms of the Settlement Agreement (the "Settlement Class"). The Court preliminarily finds, based on the terms of the Settlement described in the Settlement Agreement and for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are issues of law and fact that are typical and common to the Class, and that those issues predominate over individual questions; (c) a class action on behalf of the certified Class is superior to other available means of adjudicating this dispute; and (d) as set forth below, Plaintiffs and Class Counsel are adequate representatives of the Class. If the Court does not grant final approval of the Settlement set forth in the Settlement Agreement, or if the Settlement set forth in the Settlement Agreement is terminated in accordance with its terms, then the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated, the Amended Complaint shall be stricken from the record, the operative complaint in the Action shall be the complaint in effect as of May 24, 2024, and the Action shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue

of class certification or any other issue. Defendant retains all rights to assert that the Action may not be certified as a class action, other than for purposes of this Settlement.

4. **Class Definition.** The Settlement Class is defined as all persons in the United States who purchased any of the Products from a retail location in New York and/or Pennsylvania at any time from March 24, 2021 to the date of this Preliminary Approval Order for personal or household use. Excluded from the Settlement Class and Settlement Class Members are: (a) the Released Parties; (b) all distributors, wholesalers, retailers, and licensors of the Products; (c) all judges presiding over the Action and any members of their immediate families and/or staff; (d) Persons who made a valid, timely request for exclusion; and (e) any government entity.

5. **Class Representatives and Class Counsel.** The Court appoints Michael R. Reese and Charles D. Moore from Reese LLP, Spencer Sheehan from Sheehan and Associates, P.C., and James Chung from the Law Office of James Chung as counsel for the Settlement Class. Plaintiffs Bethea, Vazquez, Spahn and Lisa Sibirtzeff are hereby appointed as Class Representatives.

6. **Preliminary Settlement Approval.** The Court preliminarily approves the Settlement set forth in the Settlement Agreement as being within the range of possible approval as fair, reasonable, and adequate, within the meaning of Rule 23 and the Class Action Fairness Act of 2005, subject to final consideration at the Fairness Hearing provided for below. Accordingly, the Settlement Agreement is sufficient to warrant sending notice to the Class.

7. **Jurisdiction.** The Court has subject-matter jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332 and 1367 and personal jurisdiction over the Parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391.

8. **Final Approval Hearing.** A Final Approval Hearing shall be held on ____________ ___, 2026 at __:__ _.m. at the United States District Court for the Eastern District Court of New York at 225 Cadman Plaza East, Brooklyn, New York 11201, Courtroom _____, to determine: (a) whether the Action should be finally certified as a class action for settlement purposes pursuant to Rule 23(a) and (b)(3); (b) whether the Settlement should be finally approved as fair, reasonable, and adequate pursuant to Rule 23(e); (c) whether the Action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) whether Settlement Class Members should be bound by the releases set forth in the Settlement Agreement; (e) whether the Class Counsel's application for payment of Attorneys' Fees and reimbursement of Expenses should be approved pursuant to Rule 23(h); and (f) whether the application of the Class Representatives for Service Payments should be approved. The submissions of the Parties in support of the Settlement, including Class Counsel's motion for payment of Attorneys' Fees and Expenses to Class Counsel and Service Payments to the Class Representatives, shall be filed with the Court no later than thirty-five (35) days prior to Opt Out and Objection Deadline and may be supplemented by a reply fourteen (14) days prior to the Fairness Hearing.

9. **Administration and Class Notice.**

a. The Court accepts the recommendations of Class Counsel and Defendant, and hereby appoints Simpluris, Inc. to serve as Settlement Administrator in accordance with the terms of the Settlement Agreement, and to help implement the terms of the Settlement Agreement.

b. The proposed notice and the notice methodology described in the Settlement Agreement and in the Declaration of Julie Meichsner of Simpluris, Inc. (the "Simpluris Declaration") are hereby approved.

c. No later than thirty (30) calendar days after the entry of the Preliminary Approval Order, the Settlement Administrator shall cause the Notice Plan to commence as described in the Simpluris Declaration. Specifically, the Settlement Administrator shall establish a website that will inform Settlement Class Members of the terms of the Settlement Agreement, their rights, dates and deadlines, and related information. The website shall include materials agreed upon by the Parties and as further ordered by this Court.

d. Not later than thirty (30) days after the entry of the Preliminary Approval Order, the Settlement Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Settlement Class Members.

e. The Settlement Administrator shall disseminate any remaining notice, as stated in the Settlement Agreement and the Simpluris Declaration.

f. Not later than fifteen (15) calendar days before the date of the Fairness Hearing, the Settlement Administrator shall file a declaration or affidavit with the Court that: (i) includes a list of those persons who have opted out or excluded themselves from the Settlement; and (ii) attests to the proper implementation of the Notice Plan.

10. **Findings Concerning Notice.** The Court finds that the form, content, and method of giving notice to the Class as described in paragraph 9 of this Order: (a) will constitute the best practicable notice; (b) are reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) meet all applicable

requirements of law, including but not limited to 28 U.S.C. § 1715, Rule 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that all of the notices are written in plain language, are readily understandable by Settlement Class Members, and are materially consistent with the Federal Judicial Center's illustrative class action notices.

11. **Exclusion from Settlement Class.** Any Settlement Class Member who wishes to be excluded from the Class may elect to opt out of the Settlement under this Agreement. Settlement Class Members who opt out of the Settlement will not release their claims for damages that accrued during the Class Period. Settlement Class Members wishing to opt out of the Settlement must submit a form through the settlement website or send to the Class Action Settlement Administrator by U.S. Mail the form available on the settlement website or a personally signed letter including their name and address and providing a clear statement communicating that they elect to be excluded from the Settlement Class. Any request for exclusion must be received (if sent through the settlement website) or postmarked (if sent via U.S. mail) on or before the Opt-Out Date specified in this Preliminary Approval Order. Any potential Settlement Class Member who does not file a timely written request for exclusion shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the release in the Settlement Agreement, even if he or she has litigation pending or subsequently initiates litigation against Defendant or other Released Parties (as defined in the Settlement Agreement) relating to the claims and transactions released in this Action.

12. **Objections and Appearances.** Any Settlement Class Member who intends to object to the fairness of the Settlement must do so in writing no later than the Opt-Out and Objection Deadline. Any objection must be in writing, signed by the Settlement Class Member

(and his or her attorney, if individually represented), and postmarked to the Claims Administrator no later than the Opt-Out and Objection Deadline.

Any Settlement Class Member who sends a written objection, as described in the preceding Section, may appear at the Final Approval Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to any aspect of the fairness, reasonableness, or adequacy of the Settlement Agreement, including payment of Attorneys' Fees and reimbursement of Expenses to Class Counsel and payment of Service Payments to the Class Representatives. Settlement Class Members or their attorneys who intend to make an appearance at the Final Approval Hearing must serve a notice of intention to appear on the Class Counsel identified in the Class Notice, and to Defendant's Counsel, and file the notice of appearance with the Court, no later than 15 days before the Final Approval Hearing, or as the Court may otherwise direct. Any Settlement Class Member who fails to comply with Section VI of the Settlement Agreement shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments in the Action, including, but not limited to, the Released Claims and the releases in Section VII of the Agreement. Class Counsel shall have the right, and Defendant shall reserve its right, to respond to any objection no later than 14 days before the Final Approval Hearing.

13. **Disclosures.** The Settlement Administrator, Defendant's Counsel, and Class Counsel shall promptly furnish to each other copies of any and all objections or written requests for exclusion that might come into their possession.

14. **Termination of Settlement.** This Order shall become null and void and shall not prejudice the rights of the Parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if: (a) the Settlement is not finally

approved by the Court or does not become final, pursuant to the terms of the Settlement Agreement; (b) the Settlement is terminated in accordance with the Settlement Agreement; or (c) the Settlement does not become effective as required by the terms of the Settlement Agreement for any other reason. In such event, the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the Settlement shall be used or referred to for any purpose.

15. **Stay and Preliminary Injunction.** Effective immediately, any consumer actions or proceedings pending in any state or federal court in the United States involving the labeling or marketing of the Products, except any matters necessary to implement, advance, or further approval of the Settlement Agreement or settlement process, are stayed pending the final Fairness Hearing and the issuance of a final order and judgment in this Action.

In addition, pending the final Fairness Hearing and the issuance of a final order and judgment in this Action, all members of the Settlement Class and their legally authorized representatives are hereby preliminarily enjoined from demanding, threatening, filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction in the United States (defined to including both states and territories of the United States) arising out of or relating to the Products or the facts and circumstances at issue in the Action.

Also, pending the final Fairness Hearing and issuance of a final order and judgment in this Action, all members of the Settlement Class and their legally authorized representatives are hereby preliminarily enjoined from demanding, threatening, filing, commencing, prosecuting, or

maintaining any other lawsuit on behalf of members of the Settlement Class, if such other action is based on or relates to Defendant's Products.

Under the All Writs Act, the Court finds that issuance of this nationwide stay and injunction is necessary and appropriate in aid of the Court's jurisdiction over this Action. The Court finds no bond is necessary for the issuance of this injunction.

16. **Effect of Settlement Agreement and Order.** Plaintiffs' Counsel, on behalf of the Settlement Class, and Defendant entered into the Agreement solely for the purpose of compromising and settling disputed claims. This Order shall be of no force or effect if the Settlement does not become final and shall not be construed or used as an admission, concession, or declaration by or against Defendant of any fault, wrongdoing, breach, or liability. The Settlement Agreement, the documents relating to the Settlement Agreement, and this Order are not, and shall not in any event be (a) construed, deemed, offered, or received as evidence of a presumption, concession, or admission on the part of Plaintiffs, Defendant, any member of the Settlement Class or any other person; or (b) offered or received as evidence of a presumption, concession, or admission by any person of any fault, wrongdoing, breach, or liability, or that the claims in the Action lack merit or that the relief requested is inappropriate, improper, or unavailable for any purpose in any judicial or administrative proceeding, whether in law or in equity.

17. **Retaining Jurisdiction.** This Court shall maintain continuing jurisdiction over these settlement proceedings to assure the effectuation thereof for the benefit of the Class. If the Settlement receives final approval, this Court shall retain jurisdiction over any action to enforce the release provisions in the Settlement Agreement.

18. **Continuance of Hearing.** The Court reserves the right to adjourn or continue the Fairness Hearing without further written notice.

The Court sets the following schedule for the Fairness Hearing and the actions which must precede it:

a. Plaintiffs shall file their Motion for Final Approval of the Settlement by no later than [35 days before the Opt Out and Objection Deadline] ___.

b. Plaintiffs shall file their Motion for Attorneys' Fees, Costs, and Expenses, and Motion for Service Award by no later than [35 days before the Opt Out and Objection Deadline]___.

c. Settlement Class Members must send to the Claims Administrator any objections to the Settlement and the Motion for Attorneys' Fees, Costs, and Expenses, and the Motion for Service Award by no later than [35 days before the Fairness Hearing] ___.

d. Settlement Class Members must exclude themselves, or opt-out, from the Settlement by no later than [35 days before the Fairness Hearing] ___.

e. Settlement Class Members who intend to appear at the Final Fairness Hearing must file a Notice of Intention to Appear at the Final Fairness Hearing by no later than [15 days before the Fairness Hearing]___.

f. The Settlement Administrator shall file a declaration or affidavit with the Court that confirms the implementation of the Notice Plan pursuant to the Preliminary Approval Order [15 days before the Fairness Hearing] ___.

g. Class Counsel and Defendant's Counsel shall have the right to file a reply and respond to any objection no later than [14 days before the Fairness Hearing] ___.

h. The Fairness Hearing will take place on ___, 2026 at __:__ _.m. [proposed 100 days after Preliminary Approval Order] at the United States District Court for the Eastern District Court of New York at 225 Cadman Plaza East, Brooklyn, New York 11201, Courtroom _______.

**SO ORDERED this ___ day of _________, 2026:**

______________________________
Hon. Peggy Cross-Goldenberg
United States District Magistrate Judge